22 449
51 757

22 449
59 573

OMAHA MEDICAL COLLEGE, APPELLANT, V. JOHN RUSH
AND TRUMAN BUCK, APPELLEES.

1. **Schools:** CONSTRUCTION OF STATUTE. The word "school" in Sec. 2, Art. 1., Chap. 77, Comp. Stat., means an institution of learning, and is not limited to the lower grades of schools.

2. ———: EXEMPTION FROM TAXATION. Property used exclusively as an institution of learning is not subject to taxation while thus used.

APPEAL from the district court of Douglas county. Heard below before WAKELEY, J.

*Savage, Morris & Davis,* for appellant, cited: *Asylum v. Phoenix Bank,* 4 Conn., 173. *St. Mary's College v. Crowl,* 10 Kan., 442.

*John L. Webster,* for appellee, cited: *Academy of Fine Arts v. Philadelphia County,* 22 Penn. State, 496. *Wyman v. St. Louis,* 17 Mo., 335. *Chegaray v. Mayor,* 13 N. Y., 220.

MAXWELL, CH. J.

This is an action to enjoin the collection of certain taxes levied upon the property of the plaintiff in the year 1882. On the trial of the cause in the court below judgment was rendered in favor of the defendants. The plaintiff appeals.

The plaintiff alleges in its petition that it "is a corporation, duly incorporated under the laws of the state of Nebraska, for the purpose of organizing and maintaining a school for the teaching of the science of medicine and surgery; that for the purpose of the better promotion of the objects for which it was incorporated, it secured the title, on or about the 28th day of June, 1881, and now owns and occupies lots 1 and 2 in block 230 in the city of Omaha, as

29

surveyed and lithographed, and erected thereon for the exclusive use of said school, and for the promotion of the objects thereof, a large building and the necessary adjuncts thereto; that the said building is located and built upon both of said lots, and that the said lots are no more than is necessary and required for said purposes; that since the erection of said building upon said lots the same have been occupied and used exclusively for the purposes of said school; that the said building was erected on said lots and completed ready for use on or about the month of September, 1881, and has ever since that time been devoted solely and exclusively to the use of said school; that in the year 1882, the said lots with the said buildings thereon were placed by the commissioners of said county, or under their direction, upon the tax list of said county, and that they levied thereon state, school, and county taxes to the amount of $41.40 for the said year 1882; and that the city authorities of said city caused said lots to be entered upon the tax lists of the city of Omaha for said year, and levied thereon taxes to the amount of $54, for city purposes of said city of Omaha, for said year of 1882; that the said John Rush is county treasurer of said county of Douglas, duly elected and qualified, and that the said Truman Buck is the city treasurer of said city of Omaha, duly elected and qualified; that the said taxes so levied as aforesaid for city purposes for the year 1882, not having been paid, and the same having become delinquent, the said defendant, Truman Buck, as city treasurer as aforesaid, returned the said lots above described in the delinquent list which he was by law required to make out and return to the county treasurer of said county for the purpose of enforcing said city taxes, together with the state, county, and school taxes so levied as aforesaid, by the sale of said lots, and the said defendant, John Rush, as county treasurer as aforesaid, now holds said delinquent list and threatens to sell the said lots for said delinquent city taxes for said year 1882, and

also threatens to sell said lots for the delinquent state, county, and school taxes, so levied as aforesaid, for said year 1882, the said state, county, and school taxes not having been paid, but having become delinquent; and plaintiff fears that the said defendant, John Rush, as such county treasurer, will, unless restrained by the injunction of this court, sell said real estate for said delinquent taxes and thereby cast a cloud upon the title of the said plaintiff thereto; that the said lots are exempt from taxation under the constitution and laws of this state," etc. There are other allegations in the petition to which it is unnecessary to refer.

The defendants in their answer deny that said premises are occupied as a school for the purpose of teaching the science of medicine and surgery, and allege that it is incorporated as a joint stock company for the purpose of establishing a medical college, and has issued shares of stock, and that the property is used for the purpose of a medical college and other purposes, and that all students pay a certain amount each term for their instruction.

On the trial of the cause one Dr. R. C. Moore testified: "I am a physician and surgeon; am president of the board of trustees of the Omaha Medical College; the college owns the property described in the petition on which is the college building; it is used for a medical college for instruction in medicine, for nothing else; the company owns the property; it is not occupied for anything more than the necessary services or usages to which a medical college is usually put." On cross-examination he testified: "The admission, tuition, and instruction of the students are regulated by the board of trustees by resolution, also the ordinary transaction of business, the fees, the announcements, etc. We issue an announcement every year; do not know whether I have one for the year these taxes were levied or not; think I have one at my office; it was the same as in 1883; it was then used as a medical college; in

conducting the medical college we take any man who is the proper age and has the proper educational qualifications as a student; they pay a matriculation fee of $5, that is the entrance fee; then we have lecture fees, $35 per term; the term usually commences about the first of October, and closes in March; from March until October the building was not used at all; some years we have a person to live there merely to look after the property, but it is not rented. It has never been rented for any purpose; virtually it lies idle from March until October; from October until March it is used for medical instruction; that has been our way ever since the institution was opened. We have two lecture rooms; they are for lectures for the students only; we have a chemical laboratory. Then we have a museum room and the janitor's room, the faculty's room, and the dissecting room, for the professor to prepare his subject, and a general dissecting room for the students; the dissecting rooms are not used for the private benefit of the medical fraternity; they are used only for the benefit of the students. It requires three years to graduate. The matriculation fee is paid but once, the other fees annually; the student also pays $10 for a dissecting ticket and $5 for a hospital ticket; that gives him the privilege of clinics in St. Joseph's hospital, and goes to the hospital; we furnish the material for dissection; we furnish it at cost to the students; we get a body and keep an account of what it costs, and each student pays his share for what we expend on the subject. The whole institution is used for these purposes. Each professor furnishes his time, we get no pay for it; the instruction in a general way consists of teaching the science of medicine and surgery in all its branches. The fees are used for paying the expenses of the institution, the janitor, fuel, and running expenses of the college; the professors receive no part of them; when we first opened we had to bring here a professor of chemistry, and had to pay him a salary for lecturing; that was

paid out of the proceeds of the college; he is the only man that has ever been paid. No professor ever had an office in the building; we have chairs in our amphitheatre for about eighty students, and in our dissecting room could accommodate about forty or fifty; the average attendance has been about thirty; we never have paid any dividends on stock; none of the money received from the students has been used to pay a dividend to the stockholders."

This is all the testimony in the case except the articles of incorporation.

Section 2, Art. I., Chap. 77, Comp. Stat., provides that, " The following property shall be exempt from taxation in this state: *First,* The property of the state, counties, and municipal corporations, both real and personal. *Second,* Such other property as may be used exclusively for agricultural and horticultural societies, for school, religious, cemetery, and charitable purposes."

The sole question for determination is, was the property in question at the time the tax was levied used exclusively for school purposes? The first definition of the word " school" given by Webster is, " a place for learned intercourse and instruction; an institution for learning; an educational establishment; a place for acquiring knowledge and mental training."

The defendants contend with considerable earnestness that the " school purposes " mentioned in the statute apply only to the lower grade of institutions of learning, and do not include higher institutions like colleges. We can see no good reason for thus limiting the meaning of the words mentioned. An examination of any work in which the subject is fully discussed will show that the word " school" in its broad sense is applied to any institution of learning; and it evidently is used in that sense in the statute. The exemption, therefore, applies to any institution of learning used exclusively for school purposes. The exemption is expressly declared in the statute and the court should not

without good reason limit or restrict the right.    The prop-
erty in question, therefore, was exempt from taxation for
the year named, and the injunction should have been
granted.

The judgment of the district court is reversed, and judg-
ment in favor of the plaintiff will be entered in this court.

JUDGMENT ACCORDINGLY.

THE other judges concur.