STATE ex rel. CORPORATION COMMISSION v. OXFORD SEMI-
NARY CONSTRUCTION COMPANY.

(Filed 4 December, 1912.)

1. Educational Corporations—Taxation—Exemption—Constitutional
Law—Statutes.

Article V, sec. 5, of our State Constitution authorizes the Leg-
islature to exempt from taxation "property *held* for educational
. . . purposes," and our statute, Laws 1911, ch. 50, sec. 71, pro-
vides that "all property used exclusively for educational purposes"
shall be exempt from taxation, State and local": *Held*, that un-
der our Constitution it is the use to which the property is de-
voted and to the extent of the interest so dedicated which should
control, rather than the title or other tenure by which it is held,
and its provisions are broad and comprehensive enough to up-
hold the legislative exemption as to all property used exclusively
for educational purposes.

2. Same—Interpretation of Statutes.

The provisions of Article V, sec. 5, of our State Constitution
are permissive in their nature, and the Legislature may estab-
lish the exemption to the full constitutional limit or it may pro-
vide for a lesser one; and to obtain the benefit of the exemption
which is established, as, in this case, for educational purposes,
the property must be devoted exclusively to that purpose, it
being required for incorporated colleges, etc., that the real estate
exemption be confined to buildings with the land they occupy,
and to such adjacent land, etc., which is wholly devoted to edu-
cational purposes, and which belong to and are actually and
exclusively occupied by these institutions, and to the buildings
on such lands used as residences by the "officers and instructors
of such educational institutions."

3. Educational Corporations — Taxation — Exemptions — Personal
Profit—Statutes—Interpretation.

The provisions of Article V, sec. 5, of our State Constitution and
those of Laws 1911, ch. 50, sec. 71, make no distinction between
public and private educational corporations, or between institu-
tions which are in part conducted for the personal profit of the
owner and those which are run on a salary basis, using any
profits which may arise in the extension of the work.

4. Educational Corporations—Taxation—Exemptions—Constitutional
Law—Statutes—Interpretation.

In interpreting the authority, our State Constitution, Article
V, sec. 5, conferring upon the Legislature power to exempt prop-

erty incorporated for educational purposes from taxation, reference may be made to Article III, sec. 14, declaring that "schools and the means of education shall be forever encouraged," which appears also in our State Constitution of 1776, and Revisal, sec. 71, exempting all property used exclusively for educational purposes, is constitutional in purview of both of these articles of the Constitution construed together.

**5. Same.**

It is held in this case that the fact that an educational incorporation had gone for a long period of time without paying taxes unchallenged by both the legislative and executive departments of the Government is deserving of great weight by the court in construing Article V, sec. 5, and Article III, sec. 14, of our Constitution in connection and with reference to Laws 1911, ch. 50, sec. 71.

**6. Same—Personal Profit.**

It appearing in this case that the president of an educational institution and his predecessors, for fifty years, had consecrated their efforts to conducting a college with success, and that it having become necessary to renew and enlarge the school building, resort was had to the formation of a corporation for that purpose, the president of the college taking 264 shares of the capital stock of 543 shares, his friends and fellow-citizens the remainder in small amounts in recognition of the benefits of having the college is their community; that the funds available not being sufficient, the corporation, to complete the building, exclusively devoted to school purposes, borrowed $10,000, secured by a deed of trust on the property, the entire investment turned over to the president of the college at a nominal rental, and with the purpose of creating a sinking fund for the payment of the debt, the other incorporators thus far receiving no return upon their investment: *Held,* the property thus used is exempt from taxation under Laws 1911, ch. 50, sec. 71, and the statute is constitutional; and the fact that the president may receive private or separate benefit from the enterprise does not affect this construction.

APPEAL by defendants from *Carter, J.,* at Spring Term, 1912, of GRANVILLE.

Proceedings to assess property of defendant for taxation, instituted before the Corporation Commission and heard on appeal to the Superior Court, before his Honor, *Frank Carter, judge,* at April Term, 1912, of the Superior Court of Granville County. On the hearing it was made to appear that the Oxford Seminary Construction Company, incorporated, "for the pur-

pose of constructing, altering, enlarging, etc., buildings and dwelling-houses, etc., to be used for school purposes, etc., etc., had rebuilt the buildings of Oxford College," a seminary of learning, conducted and controlled by F. P. Hobgood, who owns 264 of the 543 shares of the capital stock of the company. That the building of this Oxford College is the only thing done thus far by the company in the exercise of its chartered rights. That all of the company's assets consist of this lot of lands and buildings, situate in the town of Oxford. That the real estate in question and the buildings thereon are "used exclusively for school purposes and have been so used for many years past." Stating facts more in detail, the affidavit of said F. P. Hobgood was filed in terms as follows: "That he is the president of Oxford Seminary Construction Company, a corporation duly created by and under the laws of the State of North Carolina, with its principal office in the town of Oxford, said State and county; that said Oxford Seminary Construction Company is the owner of the buildings and grounds now used and occupied by the Oxford College and wholly and exclusively devoted to school purposes, and the total number of shares of the capital stock issued and now outstanding of said corporation is 543, of the par value of $25 per share, making a total of the capital stock of said corporation issued and outstanding of $13,575; that for the purpose of completing buildings to be used for and exclusively devoted to school purposes it became necessary for the said corporation to borrow the sum of $10,000, which was secured by a deed in trust upon the property of the said corporation; that of the said $10,000 thus borrowed, $1,000 has been repaid, leaving a balance due by said corporation on said loan of $9,000; that the said corporation leases the said grounds and buildings to this affiant for school purposes; that said ground and buildings are exclusively used for and devoted to school purposes; that this affiant pays as rental for said school property the interest on the money borrowed by said corporation, pays the insurance premiums on the buildings situate thereon, keeps said buildings and grounds in good repair, and pays into the treasury of said corporation the sum of $250 per annum for the purpose of creating a sinking fund with which to discharge

the principal of the money borrowed as aforesaid; that said lot of land and the buildings thereon have been used exclusively for school purposes for more than fifty years; and that during all these years neither the State nor the county nor the town of Oxford have ever demanded the payment of any taxes on said school property." On these, the facts chiefly relevant to the inquiry, the Corporation Commission held the property liable for taxation, basing its ruling principally on the ground that the term "held for educational purposes" in the constitutional provision did not sanction or permit the exempting of school property used for the private and personal profit of the proprietor and head of a school, and that neither the Constitution nor the statute made or intended to make any exemption in such case. Quoting from the learned opinion of Hon. E. L. Travis, who spoke for the Commission: "It will be noted that the language of the Constitution is somewhat different from that of the statute; that the Constitution authorizes the General Assembly to exempt only 'property held for educational purposes,' but the statute declares as exempt 'property used exclusively for educational purposes' and buildings and lands 'wholly devoted to educational purposes, exclusively occupied and used by a school or college for such purpose.' The matter was argued before us upon the language of the statute only, and without reference to the Constitution, but it is clear that the statute cannot operate to exempt any property except that which is authorized by the Constitution to be exempted. It, therefore, could not, if it attempted to do so, exempt any property except such as is 'held for educational purposes.' We think that the words 'held for educational purposes,' included only the property so held in respect to its title and beneficial ownership; that the property itself, and all its profits and accretions, are dedicated to educational purposes, in such sense that neither the property nor its profits could be diverted by the holder, either in whole or in part, to any other use or purpose, as distinguished from property which, though used for educational work, is held for a private person or corporation for his or its own benefit, with a view to private gain or profit, and which the holder may at will put to any other use or appropriate to his or its private purposes."

And further: "To make a valid exemption, the property must come within the provision of both the Constitution and the statute. To be within the former, it must be 'held for educational purposes.' To come within the latter, if general property, it must be 'used exclusively for educational purposes,' and if buildings and lands, it must be 'wholly devoted to educational purposes' and must 'belong to and be actually and exclusively occupied and used by' an incorporated college, school, etc., for such purpose.

"It will be noted that the buildings and lands, of which the property in question consisted, to be exempt under the statute, must belong to as well as be 'exclusively used' by the school so using them. We might dispose of this particular matter on the ground that they did not belong to the school, but to the construction company. We find, however, that Mr. Hobgood, who conducts the school, is president of the construction company, and is the owner of the greater part of the capital stock in this corporation; so that the diversity of ownership is legal rather than actual. We, therefore, prefer to put our decision of the matter, which is important as affecting other schools in the State, on the broad ground that the property is not 'wholly devoted to' nor 'used exclusively for educational purposes' within the meaning of the Constitution and the statute.

"The property, whether considered as held by the construction company or by Mr. Hobgood, is not 'held for educational purposes.' It is held by the construction company generally for its own benefit, with full power to use, sell, or consume the same, and its profits, in any manner and at any time it sees fit, and to put the same to any use or purpose it may desire for its own profit. We are of the opinion that this property is neither 'wholly devoted to' nor 'used exclusively for educational purposes,' within the meaning of the statute."

And again: "The contention of the company, claiming this exemption, seems to be rested upon the view that the words 'used' and 'purposes' are synonymous, and have in this statute and the Constitution practically the same meaning. These two words have, however, different meanings and different scope, according to our view, as used in the statute and Constitution.

*Williamette University v. Knight,* 31 Oregon, 33; *University v. People,* 99 U. S., 309. The word 'used,' in this connection, signifies mere employment, but 'purposes' has reference to and comprehends the ultimate end or result contemplated by such use or employment. The exemption depends, not upon the use, but rather upon the purpose of that use. If one of the purposes of the use or one of the ends in view is private gain or profit, then the purpose necessarily cannot be 'exclusively' for education. We might credit the able educator, who conducts this school, with the high motives to which he is doubtless entitled, and concede that his purpose in using this property solely in school work is as much the promotion of education as the earning of profit, or even more; yet, if his purpose is in part the making of a profit, such purpose is not 'exclusively' for education."

The ruling of the Commission was affirmed in the Superior Court, and defendant excepted and appealed.

*The Attorney-General and Assistant Attorney-General T. H. Calvert for plaintiff.*

*F. P. Hobgood, Jr., and B. S. Royster for defendant.*

HOKE, J., after stating the case: Article V, sec. 5, of our State Constitution contains provision, among other things, "That the General Assembly may exempt from taxation 'property held for educational, scientific, literary, charitable, or religious purposes,' and our legislation under said article on matters more directly relevant to this controversy, Public Laws 1911, ch. 50, sec. 71, enacts:

"The following real estate, and no other, shall be exempt from taxation, State and local:

"1. Real estate directly or indirectly owned by the United States or this State, however held, and real estate lawfully owned and held by counties, cities, towns, or school districts, used wholly and exclusively for public and school purposes, and all property used exclusively for educational purposes."

Subsection 4:

"4. Buildings, with the land they actually occupy, wholly devoted to educational purposes, belonging to and actually and ex-

clusively occupied and used by churches, public libraries, incorporated colleges, academies, industrial schools, seminaries, or other corporate institutions of learning, together with such additional adjacent land owned by said churches, libraries, and educational institutions as may be reasonably necessary for the convenient uses of such buildings, respectively, and also the buildings thereon used as residences by the officers or instructors of such educational institutions."

Subsection 7, Clause 3:

"3. The furniture, furnishings, books, and instruments contained in buildings wholly devoted to educational purposes, belonging to and actually and exclusively used by churches, public libraries, incorporated colleges, academies, industrial schools, seminaries, or other incorporated institutions."

In the section of the Constitution referred to, a perusal of the words employed gives clear indication that it is the use to which the property is devoted and the extent of the interest so dedicated which should be regarded as controlling, rather than the title or other tenure by which it may be held, and while the language of the Constitution is very general in its terms, permitting to some extent of legislative definition (*Ferrall v. Ferrall,* 153 N. C., pp. 174-179), these terms, in any aspect of them, are sufficiently broad and comprehensive to uphold the legislation applicable to the question presented.

The constitutional provision being altogether permissive in its nature, as shown in the well-considered case of *Congregation v. Commissioners,* 115 N. C., 489, the Legislature may establish the exemption to the full constitutional limit or it may provide for a lesser one. And from this case and a further perusal of the present statute, it appears that in order to obtain the benefit of the exemption which is established, the property must be devoted exclusively to the favored purpose, and in case of "incorporated colleges, academies, industrial schools, seminaries, or other corporate institutions of learning, the real estate exemption is confined to buildings, with the land they occupy, with such adjacent land, etc., which are wholly devoted to educational purposes and which belong to and are actually and exclusively occupied by these institutions, and to the buildings on

such land used as residences by the "officers and instructors of such educational institutions." · Where the property of one of these incorporated companies, · such as this, otherwise comes within the terms of the exemption, we find nothing in the Constitution or statute which distinguishes between public and private undertakings or between institutions which are in part conducted for the personal profit of the owner and proprietor and those which are run on a salary basis, using any profits which may arise in the extension of the work. Certainly in the statute there is no such distinction, for it exempts "property held by counties, towns, or school districts" used wholly and exclusively for public and school purposes, *and* all property used exclusively for educational purposes." Both in the Constitution and statutes, it is the use to which the property is devoted which is made determinative, and not the presence or absence of consequential pecuniary benefit to the owner or proprietor. This being our view as to the meaning of the Constitution and statutes applicable, we may not approve the position that the exemption cannot be extended to cases where, as in this case, an incorporated college has for one of its objects the personal profit of the president and owner. The history of this Commonwealth affords full and ample evidence that its Government has always had the education of its people very closely at heart. In another article of our Constitution extended provision is made for this beneficent and enlightened purpose, beginning with the notable declaration taken from the act to establish a government for the Northwestern Territory, section 14, Article III, as follows: "Religion, morality, and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall be forever encouraged." This same purpose appears in the State Constitution of 1776, and the legislation under both of these instruments, including the act now before us, is against the distinction which is now attempted to be made. Speaking to this subject on a different occasion, our Attorney-General has impressively said: "This declaration, embodied in our organic law, was a registration of the faith of our fathers that religion, education, and charity are the hand-

maidens of civilization and worthy of peculiar favor at the hands of the State. All subsequent legislation must be viewed in the light of this constitutional declaration."

Again it appears that for fifty years and more no taxes have been claimed from this school by the sheriffs and tax collectors of the State and county; and this interpretation of the law by both the legislative and executive departments of the Government, unchallenged for this period of time, while not conclusive, is deserving of great weight on the construction which should finally prevail as to the proper meaning of the constitutional provision on the subject (*Gill v. Commissioners, ante,* 176); and the position, assumed and acted on by these officials, finds ample support in authoritative decisions here and elsewhere construing constitutional and statutory provisions of similar import. *United Brethren v. Commissioners,* 115 N. C., *supra; Stewart v. Davis,* 7 N. C., 244; *Phillips County v. Sister Estelle,* 42 Ark., 536; *Jose Cassiano, Collector, v. Ursuline Academy,* 64 Tex., 673; *State and Englewood School v. Chamberlain, Assessor,* 55 N. J. L., 292; 37 Cyc., pp. 932-33; 12 A. and E. (2d Ed.), pp. 324-325. In *Munday v. Van Moose,* 104 Ga., 292, an authority much relied upon by the appellee, the Court, in holding that property used for purposes of private or corporate profit or income were not exempt from taxation, seems to have been construing a section of their Constitution which provided in express terms that the exemption should not obtain if the property was used for "purposes of private or corporate profit or income" (see 104 Ga., p. 298), but no such proviso appears in our Constitution or statutes, nor in our view is any such construction permissible. We are not inadvertent to the fact that the legal title to this property is in the corporation, and that the same has been rented to F. P. Hobgood, who conducts and controls the school, and we are in full accord with the well-considered decisions which hold that the words "used exclusively for school purposes" or "wholly devoted to educational purposes" do not ordinarily apply to the case where an owner builds a schoolhouse and rents it to another for purposes of a school. *United Brethren v. Commissioners,* 115 N. C., *supra; Travelers Insurance Co. v. Kent,* 151 Ind., 349; *Tament v. City of Muscatine,* 59 Iowa, 404; *St. Marys College v. Crowell,* 10

Kan., 442; *Pratt Institute v. City of New York,* 183 N. Y., 151. But looking through the form to the substance, it appears that for fifty years and more this school has been successfully conducted by F. P. Hobgood and his predecessors, who have consecrated their energies and talents to the education of the young women of the State and from beyond its borders, and it having become necessary to renew and enlarge the school buildings, resort was had to the form of incorporation in which F. P. Hobgood took 264 of the 543 shares and his friends and fellow-citizens the remainder in small amounts, this being done by them in recognition of his worth and of the great benefit that such a school had been and promised to be to this community. The funds available not being sufficient, the corporation, in order to complete the buildings exclusively devoted to school purposes, borrowed $10,000, secured by deed of trust on the property and the entire investment is turned over to the management and control of said F. P. Hobgood, to be used exclusively for school purposes, at a nominal rental of $250, for the purpose of creating a sinking fund with which to discharge the principal of the money borrowed. The other incorporators have thus far neither received nor asked anything for their own benefit, and assuredly until the debt is paid and some return is received or demanded from this property regarded as an investment, we are of opinion that the ownership and control and management should be considered as one and the same, and that this property comes within the exemption established by the statute, the same being at present entirely dedicated to educational purposes. The learned and able commissioner who wrote ↪ opinion, with commendable frankness puts aside the view ᴊat there was a severance in the ownership and management and rests his decision on the ground that no exemption should be recognized as to property exclusively devoted to school purposes when it is made to appear that "one of these purposes is the personal profit of the owner."

For the reason stated, we are constrained to differ from this position of the commission, and the judgment of the Superior Court affirming their action must be reversed.

Reversed.