NEWTON LUMMUS, County Tax Assessor, and BOB SIMPSON, County Tax Collector, v. THE FLORIDA-ADIRONDACK SCHOOL, INC.

168 So. 232.

Opinion Filed July 31, 1934.

On Rehearing March 28, 1936.

812

*Cary D. Landis,* Attorney General, and *H. E. Carter* and *J. V. Keen,* Assistants, for Appellants;

PER CURIAM.—In this cause Mr. Chief Justice DAVIS, Mr. Justice WHITFIELD, and Mr. Justice BUFORD are of the opinion that the decree of the Circuit Court should be reversed while Mr. Justice ELLIS, Mr. Justice TERRELL, and Mr. Justice BROWN are of the opinion that the said decree should be affirmed. When the members of the Supreme Court sitting six members in a body and after full consultation, it appears that the members of the Court are permanently and equally divided in opinion as to whether the decree should be affirmed or reversed, and there is no prospect of an immediate change in the personnel of the Court, the decree should be affirmed; therefore it is considered, ordered and adjudged under the authority of State, *ex rel.* Hampton V. McClung, 47 Fla. 224, 37 So. R. 51, that the decree of the Circuit Court in this cause be and the same is hereby affirmed.

Affirmed.

Davis, C. J., and Whitfield, Ellis, Terrell, Brown and Buford, J. J., concur.

## On Rehearing.

Buford, J.—The bill of complaint herein was brought by the Florida Adirondack School, Inc., to enjoin the assessment and collection of state and county taxes upon described real estate in the City of Miami, Dade County, Florida.

It is alleged that: "the plaintiff is a corporation organized under the laws of the State of Florida for the sole and express purpose of carrying on and transacting its business as a school or academy for the promotion of knowledge; that under its charter it was given incidental powers to acquire and hold real estate and personal property; that the charter contains a clause reading as follows, to-wit:

'It is distinctly understood and agreed, however, that the primary object and purpose of this corporation is to operate and maintain a preparatory school or academy for the promotion of knowledge and education,' etc.

"The charter also contains a clause that 'all other powers embodied herein are incidental thereto and are intended to be used only when necessary for the purpose of fully protecting the interest of the school.'

"That said corporation was organized under the statute providing for corporations for profit and its capital stock was fixed at one hundred shares of common stock of no par value; said charter provided that said corporation should have perpetual existence and that its principal office should be in the city of Miami, County of Dade;

"* * * That a school has been operated upon the premises hereinafter described for many years; that said school was first operated by Professor Paul C. Ransom and Alice Ruth

Ransom, his wife, under the name of the Adirondack-Florida School; that the said Paul C. Ransom died and thereafter his widow, Mrs. Alice Ruth Ransom, at one time in conjunction with one L. H. Somers and thereafter in her own behalf operated a school upon the premises hereinafter described under the name of the Adirondack-Florida School; that said land has not been used for any purpose except school purposes for many years; that on the 31st day of December, 1931, Alice Ruth Ransom, a widow, who was the owner and holder of the fee simple title to the property hereinafter described, executed and delivered to the Florida-Adirondack School, Inc., a corporation which had previously been incorporated under the laws of the State of Florida, being the plaintiff herein, for the purposes hereinabove alleged, a general warranty deed of conveyance wherein and whereby the said Alice Ruth Ransom, a widow, granted, bargained, sold and conveyed the following described real estate lying and being situated in Miami, Dade County, Florida, * * *; that said * * * real estate is equipped with buildings, dormitories and play grounds suitable for school purposes, and that the plaintiff herein upon receiving said deed took immediate possession of the real estate * * *;

"* * * that having taken possession of said property it operated a school during the months of January, February and March and used said property solely and exclusively for school purposes; that said property was purchased for the sole purpose of providing a suitable place for the operation of a preparatory school or academy for the promotion of knowledge and education, and that said real estate and the buildings standing thereon have never been used since same were acquired by the plaintiff for any other purpose, and it is the intent of the plaintiff herein to use

said real estate and all buildings and improvements thereon solely and exclusively for educational purposes and for the promotion of knowledge and education."

By answer, the Tax Assessor averred:

"* * * that the premises described in the bill of complaint, were used during the months of January, February and March of this year, apparently for school purposes, but that the property is not used, and was not then used, solely for the purpose of providing a suitable place for the operation of a preparatory school or academy for the promotion of knowledge and education, but that said use, if so used·at all, is only incidental, and that the main purpose was for the operation of a business for profit on said premises; that (although the complainant alleges that it is operating under a non-profit charter yet the said school is operating for gain and for profit by the said complainant; that the pupils, if any there be, are taken solely and only for paid tuition, and that the said school is not operated for a public benefit, or pursuant to any public purpose, and that the said school does not conform in any degree to standard or uniform schools of the State of Florida for general education or for colleges or universities, nor is it being used, nor has it been used, as a school for the purpose of benefiting the public generally, or in conformity with other schools that are entitled to exemption under the laws of the State of Florida; * * *."

A hearing was had on the following stipulation:

"It Is Hereby Stipulated and Agreed by and between the Solicitors for the respective parties hereto that this cause may be heard and a final decree entered upon the statement of facts embodied herein, which said statement of facts is hereby conceded by all parties to apply to this cause, it being further conceded that the question of law to be de-

termined in this case is whether or not the land and buildings standing thereon upon which a school is situated and operated in the State of Florida is exempt from taxation under the Constitution and laws of the State of Florida, where the facts as embodied in the following statement of facts are shown and admitted to be true;

"1. The land described in the bill of complaint is owned by a private Florida corporation-for-profit organized for the following purposes as expressed in its charter, to-wit:

" 'It is distinctly understood and agreed, however, that the primary object and purpose of this corporation is to operate and maintain a preparatory school or academy for the promotion of knowledge and education—all other powers embodied herein are incidental thereto, and are intended to be used only when necessary for the purpose of fully protecting the interest of the school.'

" 'Such purpose and business have been pursued for many years by Alice Ruth Ransom, former owner, who conveyed to and is the principal stockholder in the plaintiff corporation, and said premises for many years previous have been exempt as school property. The school owned and operated by the corporation is open and in operation during the seasonal months of January, February and March, and used solely and exclusively for school purposes (except as might otherwise appear herein, if in fact any exemption does appear).'

"2. The property described in the bill of complaint was purchased in December, 1931, for the sole purpose of providing a suitable place for the operation of a preparatory school or an academy for the promotion of knowledge and education, and ever since it was acquired by plaintiff has been used for no other purpose (except as may otherwise appear herein) ; that it is plaintiff's intention to continue to

use said property, buildings and improvements in the future exclusively for school purposes; that no portion of said property is rented to any person whomsoever for hire and no portion is used for any business purpose save and except the operation of a school, that none of the buildings situate upon the land described in plaintiff's bill of complaint are occupied by any person whomsoever, save and except those who are actively engaged in the operation of the school, in the general superintendence of the dormitories in which the pupils sleep and by instructors and caretakers who safeguard the physical, mental and moral welfare of the children entrusted to said school, which said instructors and caretakers receive a certain monetary compensation paid out of the receipts of said school and in addition thereto receive their board and lodging while actually engaged in such work. The school operated by the plaintiff is operated during the Winter months only, and the pupils attending said school are enrolled as pupils during said Winter session; said pupils attend a school that is operated in the Adirondacks in the State of New York during the summer months. The same teachers who act as instructors in the Florida school also act as instructors in the school which is being operated in the Adirondacks. Practically every pupil of the local school is required to lodge and board on the premises in order that they may be kept under the observation of competent, vigilant instructors who safeguard their mental and moral welfare. During the summer months when the local school situated on land described in the bill of complaint is not in operation buildings are closed and no portion is used for any business purpose or occupied except by a caretaker employed solely for the purpose of looking after the grounds and protecting property, but who has no interest therein (except as may be other-

wise stated herein). During school season no persons, except as herein stated, live upon the premises, and said persons assert no individual interest or claim in and to said property, except as might otherwise hereinbefore appear.

"Pupils of said school are admitted by privately paid tuition fees. Any profit remaining on hand with the corporation after disbursing operating expenses would be disposed of by way of dividends to the stockholders. That no income of whatsoever character is derived from said premises save and except the tuition that is paid by pupils who attend said school.

"That said property is now being assessed by the County and State for Taxes and was assessed for the year 1932 and will be so assessed for the year 1933 unless restrained by this Honorable Court. The exceptions, if any, embodied herein are not intended to in any way contradict or deny any of the statement of facts above enumerated but are inserted for the purpose of giving the defendants the full opportunity of relying upon any matter herein admitted to be true which may be favorable to the defendants and of taking advantage of any insufficiency in the statement of facts."

The court decreed that:

"1. The property described in the bill of complaint * * * was on December 31, 1931, and is at the present time, and further was during the interim between said dates within the terms and conditions of the exemption from taxation as recited in Article XVI, Section 16, of the Constitution of the State of Florida; and is and was during the times aforesaid used exclusively for school purposes, and was and is, therefore, by virtue of said constitutional provision, wholly and completely exempt from any and all taxes, assessments

for taxes, levy of taxes, sale or attempted sale of and from taxes of any kind, nature or description whatsoever;

"2. Any tax or taxes, assessment for taxes, levy of taxes, sale or attempted sale therefor, at any time from and including December 31, 1931, was and is hereby declared to be wholly null and void, and of no force, effect or virtue whatsoever;

"3. Any tax certificate, or certificates for such taxes, assessment for taxes, levy of taxes, sale or attempted sale therefor, now or at any time previous outstanding from and including December 31, 1931, be, and the same are, hereby severally declared to be null and void, and of no force, effect or virtue, and are hereby severally cancelled, vacated and annulled;

"4. Any and all officers, agents, servants and employees, severally, of the State of Florida and County of Dade or any other taxing body, entity, unit or district within said State of Florida, are hereby severally ordered, directed and instructed to forthwith cancel and declare void any and all such certificates or evidences of sale or attempted sale, respectively, as aforesaid, making proper notices or entries of such acts upon their respective rolls, documents, books, and/or records, wherever the same may appear;

"5. The defendants herein severally and any officers, agents, servants, and employees of the State of Florida and County of Dade, or any other taxing body, unit entity or district be, and they are hereby, severally enjoined and restrained perpetually from selling or attempting to sell or transfer any of the aforesaid property by reason of any tax or tax certificate or certificates, dating from December 31, 1931, now outstanding on any of said property; and

"(6) The defendants herein, severally, and any officers, agents, servants or employees of the State of Florida and

County of Dade, or any other taxing body, unit entity or district, be and they are hereby severally enjoined and perpetually restrained from making any future or further assessment of taxes, levy of taxes, sale or attempted sale therefor, in anywise appertaining to said property, or of ·doing any act or thing whatsoever which would have the effect of creating such an assessment, levy or sale or attempted sale of said property for taxes as aforesaid, as long as said property is used exclusively for school purposes and exempt from taxation under the provisions of Article XVI, Section 16, of the Constitution of the State of Florida."

The defendants appealed and assigned as errors the decree and each paragraph thereof.

The Constitution of Florida contains the following:

"The Legislature shall provide for a uniform and equal rate of taxation, except that it may provide for special rate or rates on intangible property, but such special rate or rates shall not exceed five mills on the dollar of the assessed valuation of such intangible property, which special rate or rates, or the taxes collected therefrom, may be apportioned by the Legislature, and shall be exclusive of all other State, County, district and municipal taxes; and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law for municipal, education, literary, scientific, religious or charitable purposes. (Amended, Senate Joint Resolution 358, Acts 1923; adopted at general election, 1924), Sec. 1, Art. IX.

"The property of all corporations, except the property of a corporation which shall construct a ship or barge canal across the peninsular of Florida, if the Legislature should so enact, whether heretofore or hereafter incorporated. shall be subject to taxation unless such property be held and used

exclusively for religious, scientific, municipal, educational, literary or charitable purposes." Sec. 16, Art. XVI.

The Statutes of Florida contain the following:

"The following property shall be exempt from taxation: First, all property, real and personal, of the United States and of this State. * * *

"Third.—Such property of educational, literary, benevolent, charitable and scientific institutions within the State as shall be actually occupied and used by them solely for the purpose for which they have been or may be organized, but property of such institutions which is rented wholly or in part and the rents, issues and profits only used by such institutions shall not be exempt from taxation, nor shall any property held by them as an investment or for speculation be exempt from taxation * * *." Sec. 897 (697) C. G. L.

Under amended Section 25, Article III, of the Florida Constitution, the statutes of the State provide general laws for the incorporation of corporations for profit, Sections 5978 (4049), *et seq.,* C. G. L., which include educational and other useful companies, with exceptions not material here; and also corporations not for profit, Sections 6495 (4499) C. G. L., the latter including any "scientific institution of learning."

The general rule is that all property held in private ownership is subject to taxation for the support and efficiency of the government from which the property receives protection.

Exemptions from taxation are granted by the sovereign only when and to the extent that it may be deemed to conserve the general welfare. Organic and statutory exemptions, being in the nature of special privileges or immunities, should be strictly construed in order to confine the exemptions within the limitations prescribed by the sov-

ereign power; otherwise the law-making intent and purpose may be frustrated to the detriment of the public welfare. See Rast v. Hulvey, 77 Fla. 74, 80 So. 750; Amos v. J. R. & M. Co., 77 Fla. 403, 81 So. 524.

In order for the property of the Florida-Adirondack School, Inc., to be exempt from taxation under Section 16 of Article XVI of the Constitution, it is essential that "such property be held and used exclusively for * * * educational * * * purposes." The record shows that the property is held and used for educational purposes. To be exempt under the statute, the "property of educational institutions within the State shall be actually occupied and used * * * solely for the purposes for which they have been or may be organized."

It is alleged that the corporation was organized "for the sole and express purpose of carrying on and transacting its business as a school or academy for the promotion of knowledge"; "that said real estate is equipped with buildings, dormitories and playgrounds suitable for school purposes"; and that the Florida-Adirondack School, Inc., having acquired the property December 31st, 1931, "operated a school during the months of January, February and March, and used said property solely and exclusively for school purposes; that said property was purchased for the sole purpose of providing a suitable place for the operation of a preparatory school or academy for the promotion of knowledge and education, and that said real estate and the buildings standing thereon have never been used since same were acquired by the plaintiff for any other purpose, and it is the intent of the plaintiff herein to use said real estate and all buildings and improvements thereon solely and exclusively for educational purposes and for the promotion of knowledge and education."

The answer of the Tax Assessor contains an averment "that the premises described in the bill of complaint were used during the months of January, February and March of this year, apparently for school purposes, but that the . property is not used, and was not then used, solely for the purpose of providing a suitable place for the operation of a preparatory school or academy for the promotion of knowledge and education, but that said use, if so used at all, is only incidental, and that the main purpose was for the operation of a business for profit on said premises; that * * * the said school is operating for gain and for profit by the said complainant, * * *; that the pupils, if any there be, are taken solely and only for paid tuition, and that the said school is not operated for a public benefit, or pursuant to any public purpose, and that the said school does not conform in any degree to standard or uniform schools of the State of Florida for general education or for colleges or universities, nor is it being used, nor has it been used as a school for the purpose of benefiting the public generally, or in conformity with other schools that are entitled to exemption under the laws of the State of Florida."

The stipulation of facts states that "the property * * * was purchased * * * for the sole purpose of providing a suitable place for the operation of a preparatory school or an academy for the promotion of knowledge and education * * * ;" that "it * * * has been used for no other purpose (except as may otherwise appear herein); that it is plaintiff's intention to continue to use said property, buildings and improvements in the future exclusively for school purposes;" that "pupils of said school are admitted by privately paid tuition fees. Any profit remaining on hand with the corporation after disbursing operating expenses would be disposed of by way of dividends to the stockholders.

That no income of whatsoever character is derived from said premises save and except the tuition that is paid by pupils who attend said school."

The Constitution and statutes do not contemplate that the property of a corporation or of an educational institution which may be exempt from taxation shall be held, occupied or used for profit of any nature or extent, except that which may be incidental to the occupancy and use for educational purposes.

The Florida-Adirondack School, Inc., was incorporated under the statutes as a corporation for profit; it acquired the property in its capacity as a corporation for profit; the stipulation states that pupils of said school are admitted by privately paid tuition fees; that any profit remaining on hand with the corporation after disbursing operating expenses would be disposed of by way of dividends to the stockholders. The stipulation also states that

"It is distinctly understood and agreed, however, that the primary object and purpose of this corporation is to operate and maintain a preparatory school or academy for the promotion of knowledge and education—all other powers embodied herein are incidental thereto, and are intended to be used only when necessary for the purpose of fully protecting the interest of the school."

It is definitely alleged that it is provided in the charter of the appellee, a Florida corporation, as follows:

"It is distinctly understood and agreed, however, that the primary object and purpose of this corporation is to operate and maintain a preparatory school or academy for the promotion of knowledge and education," and contains the further provision: "all other powers embodied herein are incidental thereto and are intended to be used only when

necessary for the purpose of fully protecting the interest of the school."

This fact is not at all controlling, however, as the right to exemption will not be determined by the character of the corporation but by the character of the purpose for which the involved property is held and used, but it is indicative of the *bona fides* of the corporate power. It is the property and not the corporate entity which is exempt.

Section 1 of Article IX and Section 16 of Article XVI have been hereinbefore quoted.

The purpose of Section 16, Article XVI, is to forbid the further granting of statutory exemptions of corporate property from taxation as had been done (see Chapter 610, Laws of Florida) by limiting exemptions from taxation of the property of corporations to the purposes stated in the organic section, so as to expressly require corporate property to be taxed or exempted in accord with Section 1 of Article IX.

Under the provisions of the Constitution above quoted the Legislature may by enactments not inconsistent with the intendments of the Constitution define "educational purposes," and thereby prescribe that class of property which may come within the exemption and only exempt that property which is held and used exclusively for educational purposes as defined by the Legislature. Or, the Legislature may (as it has) exempt all property held and used exclusively for educational purposes and leave it to judicial construction to determine whether or not the purpose for which the property is held and used is an "educational purpose."

We do not mean to say that the power vested in the Legislature to define property included within the exemption prescribed by the Constitution may be exercised in an arbitrary and unreasonable manner. Such legislative defini-

tion would have to be in harmony with the intent of the Constitution.

The Legislature having the authority to define and limit those educational purposes and having failed to do so, we must assume that it was the legislative intent that the exemption should apply to the property "held and used exclusively" for *any* educational purpose.

In construing both the Constitution and the statutes we may look to the historical background to determine the cause and intent of the enactments.

Prior to the Civil War of 1861-1865, the educational facilities of Florida were found almost entirely in private schools. Some were conducted by individuals without charters of any sort, while others were chartered as academies and the like. We find such records of Leon Academy, Miccousookee Academy, Quincy Academy, Munroe Academy and some fifteen or more others.

After the War the Constitution of 1868 carried provision, Sec. 1, Article XII, as follows:

"Section 1. The Legislature shall provide for a uniform and equal rate of taxation, and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes."

And Sec. 24, Article XVI:

"The property of all corporations, whether heretofore, or hereafter incorporated, shall be subject to taxation, unless such corporation be for religious, educational, or charitable purposes."

In 1875, Sec. 24, Article XVI, was amended to read:

"Sec. 24. The property of all corporations, whether heretofore or hereafter incorporated, shall be subject to taxa-

tion unless such property be held and used exclusively for religious, educational or charitable purposes."

In 1885 the Constitution provided as is hereinbefore quoted.

Legislative records disclose that during the years even prior to 1868 the exemption of corporate property from taxation had grown to be somewhat of a menace. Special interests were enjoying exemptions which could not be justified and which if continued would seriously deplete the resources of revenue from ad valorem taxation, which accounts for the inclusion of the provisions of Sec. 16 of Art. XVI in the Constitution as amended in 1875 and now carried as Sec. 16 of Article XVI of the Constitution of 1885. See Atlantic & Gulf R. R. Co. v. Allen, 15 Fla. 635.

It will be observed that under the provisions of the Constitution of 1868 the exemptions were based upon the purpose for which the corporation existed while the amendment of 1875 based the exemption upon the purpose for which the property was held and used. City of Lakeland v. Amos, 106 Fla. 873, 143 So. 744; City of West Palm Beach v. Amos, 100 Fla. 891, 130 Sou. 710.

The statute, Sec. 697, R. G. S., 897 C. G. L., was enacted in Chapter 4322, Laws of 1895, although similar Acts had theretofore been in effect. During all this time public schools (even as they are to some extent today) were found to be inadequate to furnish all the required educational facilities and therefore it was deemed expedient to encourage the establishment and maintenance of private schools; and exemption from taxation was deemed a fair means to accomplish this without placing burdens on a people who were in no position to assume burdens. Certainly it was never contemplated that these institutions could be operated with no source of revenue and certainly it was known and

contemplated that such institutions, the property of which was held and used exclusively for educational purposes, would be required to charge and collect tuition from those who were able to afford to pay for the privileges offered. It was also known that those engaged in the profession of teaching and conducting these private educational institutions, whether being conducted by one person in a single room or by an organization in several rooms or houses, would be required to so arrange matters as to make their employment in the enterprise a means of earning a livelihood.

The earning of a livelihood or even a mere incidental surplus, if any, would not be deemed to effect a change in the purpose for which the private property was held and used by the individual or organization. The earnings were, and are, an incident to the performance of the service and are *per se* not a putting of the property to some other use than that of an "educational purpose." A concerting of the property to some other purpose, such as using it for and declaring it a family homestead, or the renting of it to acquire revenue would, on the other hand, take it out of the class of "exclusive educational purpose." See Rast, Tax Collector, v. Hulvey, 77 Fla. 74, 80 Sou. 750.

We hold that the property involved in this case, because of its long continued use as a school was exempt under the Constitution and laws of Florida. While we do not approve as liberal a rule as is stated in some of the cases hereinafter cited, our holding here is supported by authority of opinions from many jurisdictions, prominent among which are those reported as follows:

Rast v. Hulvey, *supra;* Goldfield Consol. Co. v. State, 35 Nev. 178, 127 Pac. 77; State v. Carlton College, 154 Minn. 280, 191 N. W. 400; Rohrbaugh v. Douglas County, 76

Neb. 679, 107 N. W. 1000; Board of Commissioners of Tulsa County v. Tulsa Business College, 150 Okla. 197, 1 Pac. Rep., 2nd series, 351; St. Johns Military Academy v. Edwards, 143 Wis. 551, 128 N. W. 113; St. Mont. Clair Military Academy v. Bowden, 65 N. J. Law 214, 47 Atl. 490; Detroit Home & Day School v. City of Detroit, 75 Mich. 521, 43 N. W. 594, 6 L. R. A. 97; City of Chicago v. People, *ex rel.,* 80 Ill. 387; Cassiano v. Ursuline Academy, 64 Tex. Rep. 675; Omaha Medical College v. Rush, 22 Neb. 449, 35 N. W. 222; Corporation Commission v. Oxford Seminary Constr. Co., 160 N. C. 582, 76 S. E. 640; Ward Seminary v. Nashville, *et al.,* 129 Tenn. 412, 167 S. W. 113.

We have considered many other authorities supporting even a more liberal construction than we are willing to sanction but we deem it unnecessary to cite more of them here. It is sufficient to say that the construction which we adopt is supported by ample authority throughout the country.

Therefore, the decree should be affirmed and it is so ordered.

Affirmed.

WHITFIELD, C. J., and DAVIS, J., concur.

TERRELL, J., agrees to the conclusion.

ELLIS, P. J., not participating.

BROWN, J. (concurring specially).—I concur fully in the opinion and judgment of affirmance, except in one particular referred to in the opinion. My view is that Section 16 of Article XVI is self-executing, and that the Legislature is without power to authorize the taxation of property of corporations held and used exclusively for religious, scientific, municipal, educational, literary or charitable purposes." Legislative definitions of these words in the Constitution, as applied to property of specific institutions or corpora-

tions, might be entitled to great weight, if and when made, but if clearly wrong they could not be allowed to defeat the meaning and purpose of the constitutional provision as judicially construed, so long as it remains a part of our Constitution.