BARKER, ROGER A., Associate Judge.
On August 16, 1957, appellee brought a suit against appellant and the members of the Canvassing Board of the Town of Bel-lair Shore, such action contesting the election on August 15, 1957 of appellant as mayor-commissioner of the town. The expressed ground for the contest was that 14 of the 29 votes cast at the election were cast by persons allegedly not qualified to *716 vote because of the fact that they were “non-residents” of the municipality. The action sought a determination that the ap-pellee was entitled to be declared elected to the office of mayor-commissioner and that appellant be ousted from the office.
To this complaint appellant interposed several defenses among which were:
1. That all persons voting in the election were qualified to vote by the provisions of Chapter 30784, Special Acts, Laws of Florida, 1955, which was the act of the legislature establishing the Town of Bellair Shore.
2. That appellant was properly certified as elected following a proper and accurate canvass of the votes cast in the election.
3. That appellee by reason of his conduct as a member of the canvassing board and conduct in other official capacities was estopped to contest the election.
In due time motions for summary judgments were urged by both sides. The chancellor granted appellant’s motion for summary judgment holding that appellee was estopped to contest the election. Thereafter a petition for rehearing was filed by appellee. Following the argument on this petition the chancellor reversed himself and granted the petition and entered a summary decree of ouster. The lower court predicated its reversal on the grounds that it had misapprehended the facts concerning the alleged acts constituting estoppel previously adjudged. The chancellor found that 29 votes were cast in the election for the two candidates for the office of mayor-commissioner. Twelve of the votes were cast by persons who were not then and who for more than six months immediately prior thereto had not been residents of the Town of Bellair Shore therefore these votes were illegal and void. Out of the remaining 17 votes cast 11 votes were cast for appellee who was therefore lawfully elected mayor-commissioner of the town.
The chancellor held that residence within the town is not expressly prescribed by Section 7(e) of the charter, however such section must be considered in conjunction with all other provisions of the charter and with the provisions of Section 165.12, Florida Statutes, 1957, F.S.A., which section must be .read in pari materia with the charter. The chancellor held that persons voting in elections for mayor-commissioner must meet the qualifications set forth in Section 165.12, Florida Statutes, 1957, F.S. A., as well as being freeholders as prescribed by section 7(e) of the town charter.
Although many points were raised on appeal and argued in the able briefs of counsel, this matter may be disposed of on the question whether or not the 12 votes cast by non-resident freeholders were lawful votes.
In resolving this problem we must review several principles of law laid down by our Supreme Court in the early case of State ex rel. Attorney-General v. Dillon, 32 Fla. 545, 14 So. 383, 22 L.R.A. 124, which was decided in 1893, wherein the Court held:
“The right to vote is not an inherent or absolute right generally reserved in bills of rights, but its possession is dependent upon constitutional or statutory grant. Subject to the limitations contained in the federal constitution, such right is under the control of the sovereign power of the state; and where the constitution has conferred the right, and prescribed the qualifications of electors, the legislature cannot change or add to them in any way, but where the constitution does not confer the right to vote, or prescribe the qualifications of voters, it is competent for the legislature, as the representative of the lawmaking power of the state, to do so.
“Section 1 of article 6 of the constitution of 1885, prescribing the qualifications of electors at all elections under it, does not apply to elections for municipal officers in the state, but such *717 elections are subject to statutory regulation ; and it is competent for the legislature to prescribe the qualifications of voters at the same.
* * * * ❖ *
*fIn Kinneen v. Wells, 144 Mass. 497, 11 N.E. 916, it is said: ‘The qualifications of voters are fixed by state legislation. The requisitions as to ownership of property, citizenship, sex, and residence, in connection with the right of voting, vary with the constitution or laws of the several states. However unwise, unjust, or even tyrannical its regulations may be, or seem to he, in this regard, the right of each state to define the qualifications of its voters is complete and perfect, except so far as it is controlled by the fifteenth article of the amendments of the constitution of the United States, which provides that “the right of citizens of the United States to vote shall not be denied or .abridged by the United States, or by .any state, on account of race, color, or ¡previous condition of servitude.” ’ ”
(See also Town of San Mateo City v. State ex rel. Landis, 117 Fla. 546, 158 So. 112.)
In view of the foregoing principles of Jlaw we next direct our attention to the general and special statutory regulations per-taining to the qualifications of electors of the Town of Bellair Shore. Section 165.12, Florida Statutes, 1957, F.S.A., sets forth the -general qualifications for electors in municipal elections. Among its provisions is the requirement that electors shall have re- ■ sided in the city or town six months next -preceding the election. Examination of the legislative history of this section reveals -that it was enacted under authority of Revised Statutes of 1892, Section 670. The ■ charter of the Town of Bellair Shore was enacted by Chapter 30784, Special Acts, Laws of Florida, 1955. Section 7(e) of the . charter provides:
“The electors shall be freeholders of . improved property. By improved property is meant, a lot upon which a seawall and dwelling have been erected in conformity with the charter and ordinances of the town.”
A review of the town charter does not reveal any other qualifications laid down for an elector. The charter does provide in Section 7(c) a residential requirement of one year in addition to being a qualified elector for one to become a qualified candidate for office in the town elections. The charter also provides in Section 12(b) (1), wherein the assessing of ad valorem taxes for local improvements is set forth, in part as follows:
“Said resolution may, in addition to the preceding requirements, contain a provision calling an election of the freeholders who are qualified electors residing in the Town of Gulf Belleair, Florida, [now known as Bellair Shore] for approval of the issuance of special assessment certificates of indebtedness * # %
Section 30 of the town charter further provides in part as follows :
“After the effective date of this Act and after the election of the First Board of Commissioners * * * said Board of Commissioners are authorized to call a special election to be held within the Town, at which election the registered voters within the Town may choose a name by which they desire said Town to be known and called.”
It therefore appears from the wording of the charter that the legislature provided that the qualified electors of the town should be freeholders of a particular type of improved property. It is apparent that such electors would participate in the election of the board of commissioners. However, the legislature in its wisdom saw fit to add on certain residential .requirements to a qualified elector if he desired to run for public office, or wished to vote in an election concerning the issuance of certificates of indebtedness, or change the name of the town.
*718 This Court does not concern itself with the wisdom of such legislation, for as pointed out in State ex rel. Attorney-General v. Dillon, supra, it is competent for the legislature to prescribe the qualifications of voters in a municipal election. In this matter the legislature saw fit to grant a right of suffrage to any and all freeholders as defined, to participate in the election of mayor-commissioner. This in effect gave both the resident and non-resident freeholders, meeting the stated qualifications, a voice, in the city government which the non-resident freeholders would not otherwise have. Such theory of government is consonant with the theory of our forefathers in throwing off the shackles of a government of taxation without representation.
. The chancellor below in construing both the general laws as well as the provisions of the charter of the Town of Bellair Shore in pari materia held that a person voting in the election for mayor-commissioner must meet the residential requirements set forth in Section 165.12, Florida Statutes, 1957, F.S.A., as well as being freeholders as prescribed by Section 7(e) of the Town charter.
This rule of statutory construction would be sound if it were not for the other rules of statutory construction which we must consider, especially in view of the affidavits before the lower court regarding the history of the special act creating the Town charter. A review of the record reveals that two uncontroverted affidavits were submitted together with a stipulation of facts on appellant’s motion for summary judgment. One of these affidavits was made by L. L. Parks who was a resident of Hillsborough County, as well as a freeholder of Bellair Shore. His affidavit revealed that the Town of Bellair Shore is composed of property owners on an island along the Gulf coast located on the Pinellas peninsula. Because of erosion problems the resident and non-resident property owners came together to obtain a town charter. It was expressly understood and agreed that the non-resident freeholders meeting the requirements set forth in Section 7(e) of the charter would be allowed to participate in the municipal election. Since the granting of the town charter by the legislature in 1955 the non-resident freeholders as well as the resident freeholders meeting the requirements of Section 7(e) of the Town charter were registered and allowed to vote in all elections held up to and including the election in question. L. L. Parks’ affidavit revealed that he was instrumental in drawing the Town charter and presenting it to the legislature for enactment.
This Court in construing the special act creating the Town of Bellair Shore can look to the historical background to determine the cause and intent of such enactment. Lummus v. Florida-Adirondack School, 123 Fla. 810, 168 So. 232; also Lummus v. Miami Military Academy, 123 Fla. 832, 168 So. 241.
The provisions of Section 7(e) of the charter is significant in ascertaining the legislative intent because of the unusual qualifications of the type of freehold one must possess in order to entitle him to vote. The unusual provisions of Section 7(e) corroborate Parks’ affidavit as to the intent of the framers of the Town charter as well as the intent of the legislature in enacting it.
Therefore we must ask ourselves, Did the legislature intend by the provisions of Section 7(e) of the town charter to grant suffrage to non-resident freeholders meeting certain property requirements, notwithstanding the residential requirements set out in Section 165.12, Florida Statutes, F.S.A.?
In addition to ascertaining the actual legislative intent insofar as its history is concerned, we must consider other principles of statutory construction as being applicable to this matter, such as,
*719 “Where there are valid local or special laws relating to the powers and government of particular municipalities that are in conflict with the general statutory law, such local or special laws prevail.” Sanders v. Howell, 73 Fla. 563, 74 So. 802; Ex parte Davidson, 76 Fla. 272, 79 So. 727; Wade v. City of Jacksonville, 113 Fla. 718, 152 So. 197; Quigg v. State ex rel. Miller, 145 Fla. 431, 199 So. 489.
However, we do not hold that Section 165.12, Florida Statutes, F.S.A., should not be read in pari materia in connection with Section 7(e) of the Town charter, for as Justice Roberts stated in Adams v. Culver, Fla., 111 So.2d 665, 667,
“It is a well settled .rule of statutory construction, however, that a special statute covering a particular subject matter is controlling over a general statutory provision covering the same and other subjects in general terms. In this situation ‘the statute relating to the particular part of the general subject will operate as an exception to or qualification of the general terms of the more comprehensive statute to the extent only of the repugnancy, if any.’ Stewart v. DeLand-Lake Helen, etc., 71 Fla. 158, 71 So. 42, 47, quoting State ex rel. Loftin v. McMillan, 55 Fla. 246, 45 So. 882; American Bakeries Co. v. City of Haines City, 131 Fla. 790, 180 So. 524.”
We therefore hold that the chancellor below was in error in not construing Section 7(e) of the Town charter as being an exception to the residential requirements set forth in Section 165.12, Florida Statutes, F.S.A. It follows that the votes of the non-resident freeholders were valid.
Reversed with directions to enter a decree consistent with this opinion.
ALLEN, C. J., and KANNER, J., concur.