ERNEST AMOS, *as* COMPTROLLER OF THE STATE OF FLORIDA, AND L. T. IVEY AS CLERK OF THE CIRCUIT COURT FOR CLAY COUNTY, FLORIDA, *Appellants*, v. JACKSONVILLE REALTY AND MORTGAGE COMPANY, A CORPORATION, *Appellee*.

## Opinion filed April 17, 1919.

1. The property of an educational institution is not exempt from taxation in Florida when used partly for the residence of the principal of such institution.

2. The property of an educational institution is not exempt from taxation in Florida where a part of such property is rented to a tenant by such institution.

3. It is the duty of the owner of taxable property in Florida to return it for taxation, and a failure to make such return visits upon him a forfeiture of certain rights under the law, and an assessment of his property is binding upon him when made pursuant to law.

4. Land should be assessed under Chapter 5596, Laws of Floriad, 1907, in the name of the owner, or in the name of his legal representative, as shown by the return, or as "unknown" in the absence of a return, though an assessment in the name of the owner to whom it was assessed the year before is permissible.

5. An assessment of land to "Est. P. B. Hamilton" as owner is not a valid assessment under the law permitting property to be assessed in the name of the same owner as the year before.

6. Chapter 6157, Laws of Florida, is not applicable to an assessment of taxes for a year other than 1911 or 1912.

7. The publication of tax sale notice in the only newspaper pub
lished in a county, once before and four times after its se-
lection by the County Commissioners for such purpose, is
such a compliance with Section 50, Chapter 5596, Acts of
1907, as not to render a tax sale based thereon invalid.

8. Tax Assessors are not required under the law to anticipate
the sale of land to the State for taxes of the previous year,
but may assume that taxes assessed will be paid by the prop-
er party.

9. The clerical omission of a word from a tax sale certificate
will not render such certificate void, when by an examina-
tion of other records required to be kept the omission is ap-
parent and when such omission has not resulted in harm to
any person.

An Appeal from the Circuit Court for Clay County;
George Couper Gibbs, Judge.

Decree affirmed in part; reversed in part.

*Van C. Swearingen,* Attorney General, for Appellants;

*Ryenolds & Rogers,* for Appellee.

HORNE, *Circuit Judge.*—The appellee filed a bill in
equity to have declared to be invalid and illegal certain
tax sale certificates of Clay County, Florida, for the
years 1914 and 1915 for the non-payment of taxes for the
years 1913 and 1914, respectively, upon two parcels of
land referred to in the pleadings as "First Parcel" and
"Second Parcel," because of a claim of exemption from
taxation, and because of a claim that the assessment and
sales were invalid for stated reasons. A demurrer to the
whole bill was properly overruled. By answer, the de-

VOL. 77, JANUARY TERM, 1919.          405

Amos et al. v. Jacksonville Realty and Mortgage Co.—Opinion of Court.

fendants controverted the essential allegations of the
bill. The case was finally heard upon bill, answer and
an agreed statement of facts, to the effect, among other
things,

That in June, 1908, George W. Hulvey opened a pri-
vate school under the name of Florida Military Academy,
in the town of Green Cove Springs, in Clay County, Flor-
ida, and for the use of said school rented the two parcels
of land above referred to; that thereafter on May 1st,
1911, he purchased both parcels of land, and in 1916 his
title to said parcels of land were by mesne conveyances
transferred to the complainants; that in 1912 the first
parcel was assessed to Mr. Hulvey as owner and was ex-
empt from taxation on the theory that it was used for
educational purposes; that in 1912 the second parcel was
assessed under the name of "Est. P. B. Hamilton" and
the taxes for that year were paid; that at a meeting of
the Board of County Commissioners of Clay County, held
on July 9th, 1913, for the purpose of reviewing and equal-
izing the assessment rolls of said county for said year,
there was added thereto the "First Parcel," describing it
substantially to George W. Hulvey as owner at a valua-
tion of $8,000; that thereafter Mr. Hulvey on August
4th, 1913, appeared before the Board while they were in
session hearing complaints about the assessments for that
year and requested that such property be exempt from
taxation because it was owned and used for educational
purposes. His request was denied, and each of the par-
cels of land were listed and assessed upon the tax books
of the county, as certified to the Tax Collector, the first
parcel to George W. Hulvey as owner, value $8,000, and
the second parcel to "Est. P. B. Hamilton" as owner,
value $400. The taxes were not paid and on August 14th,

1914, the Tax Collector sold both parcels to the State of Florida and executed and delivered tax sale certificates of Clay County, Florida, for the tax sale of 1914, numbered 261 and 262 therefor; that the Board of County Commissioners did not in February, nor thereafter until July 6th, 1914, pass an order selecting the newspaper in which the tax sale notice should be published, and on July 6th, 1914, did designate the Clay County Times as the newspaper in which such notice should be published, and this designation or selection was made after the first publication of such notice in the Clay County Times of July 3rd, 1914, and thereafter it was published in the issues of said paper of July 10th, July 17th, July 24th, and July 31st, 1914; that on the tax books of Clay County, Florida, for the year 1914, as the same was certified to the Tax Collector, the two parcels of land were listed, the first parcel to George W. Hulvey as owner, value $8,000, and the second parcel to "Est. P. B. Hamilton" as owner, value $400; the taxes on these lands for the year 1914 were not paid; the lands were advertised and sold by the Tax Collector on August 2nd, 1915, to the State of Florida for the nonpayment of the taxes for 1914, and tax sale certificates were made therefor; that beginning in June, 1908, and continuing until September, 1913, said lands were used for the purpose of said Florida Military Academy as follows: The first parcel, with one of the buildings known as the St. Elmo Hotel Building, was used for the dormitories and class rooms of the students, the living apartments of the instructors; that no part of such building (the Hotel Building) was rented or used for the residence of any person except said George W. Hulvey and family and the teachers and students, nor for any business whatever other than conducting the school therein; " * * * the grounds were used

solely as the drill grounds and recreation grounds of the students and the second parcel was used solely as an athletic field of the students." "During vacation periods, the said George W. Hulvey and his family continued to reside in said Academy Building * * *," "there was a cottage standing upon a small lot in the north-west corner of first parcel of land," "on January 1st 1913 * * * said George W. Hulvey rented said cottage * * * to a tenant from month to month for the agreed rental of twelve dollars per month. This tenant occupied said cottage until about April 10th 1913," and there was a further stipulation as to the resolutions of the Board of County Commissioners levying taxes for the year 1913 and for the year 1914.

The defendant officers refused to cancel these tax sale certificates as being illegal and void.

Under the Constitution and Laws of Florida, the property of an educational institution shall be exempt from taxation in this state [that] shall be actually occupied and used by such educational institution solely for the purposes for which such institution may have been organized or conducted, but property of such institutions which is rented wholly or in part shall not be exempt from taxation. Sec. 4, Chapter 5596, Acts of 1907, Sec. 431, Compiled Laws of Florida, 1914; Section 1, Art. 9, Constitution of Florida; Rast v. Hulvey, 77 Fla. —, 80 South. Rep. 750.

Under the facts disclosed, the "First Parcel" was not exempt from taxation for the year 1913, because it was used in part as a residence, and part of it has been rented· In view of the conclusion reached as to the "Second Parcel," and as it is not now owned by an educational insti-

408 SUPREME COURT OF FLORIDA.

Amos et al. v. Jacksonville Realty and Mortgage Co.—Opinion of Court.

tution, it is not necessary to express an opinion as to whether or not the second parcel was exempt from taxation under the law upon the facts disclosed.

Chapter 6157, Laws of Florida, Acts 1911, is not applicable to the questions in this case.

Under the law it was the duty of George W. Hulvey, as the owner of the property subject to taxation, to return the same for taxation to the county assessor on or before the first day of April of each year, and give the character and true value of it, and upon his failure to do so, the assessment and the valuation made by the tax officers shall be deemed and held to be binding upon such owner (and his grantees), except that complaint could be made (by such owner) of such assessment and valuation on the day set for hearing complaints and receiving testimony as to the value of any property as fixed by the county tax assessor. Section 16, Chapter 5596; Section 514-A, Compiled Laws of Florida. The record shows that Mr. Hulvey was present and tried to get an exemption, but no effort was made to reduce the value or change the name of the owner. Under the law, the tax assessor of the county shall ascertain the value of lands, and shall assess them in the name of the owners, legal representatives of the owners, or as unknown * * * and when the lands have not been returned on or before the first day of April in each year, by the owner or some one for him, the tax assessor shall enter the word "Unknown" in the column of the assessment roll provided for the name of the owner. The assessment book shall have an alphabetical index in which the tax assessor shall indicate the name and postoffice address of each person whose name appears upon the assessment rolls. Section 522, Compiled Laws; Section 20, Chapter 5597, Acts 1907. The

first parcel of land was assessed to George W. Hulvey, the owner, as contemplated by the statute. Euch assessment' is not illegal as claimed.

The agreed statement of facts shows "that on the assessment roll of Clay County for the year 1913 as it was certified to the tax collector, the second parcel was listed as follows: 'a lot opposite and east of St. Elmo Hotel bounded on East by St. Johns River, south by the LaSalle property, west by St. Johns Avenue, and north by St. Johns Villa,' owner 'Est. P. B. Hamilton,' value '$400,'" and a similar statement as the assessment for the year 1914.

There is no question raised as to the description, or the value of the property, nor is any question raised as to the assessment not being in accordance with the returns as made by the owner. There is no showing made as to why the property was assessed to "Est. P. B. Hamilton." If a return was made requiring such an assessment it was not correct as to ownership. The Assessor should assess it as unknown in the absence of a return. We take it that the assessing officer made the assessment in this way for 1913 because it had been so assessed for 1912 and assessed it in 1914 because so assessed in 1913, taking it for granted that Section 26, Chapter 5596, Acts 1907, would make it a legal assessment. The second parcel of land was not assessed to the owner or to the legal representative of the owner or as "Unknown" for any of the years mentioned, as required by the statute. The assessment to "Est. P. B. Hamilton" was unauthorized and illegal. L'Engle vs. Wilson, 21 Fla. 461. As there was no legal or valid assessment of said second parcel for the years 1913 and 1914, the tax sale certificates for said

land, based upon such void assessments, are illegal and void, and were properly decreed cancelled.

Nothing is shown by the record in this case as to the number of newspapers published in Clay County during the year 1914. If there is more than one, then the law is mandatory that the county commissioners select the one in which the tax sale notice should have been published. Section 50, Chapter 5596, Acts 1907; Stephens vs. Futch, 73 Fla. 708, 74 South. Rep. 805; Townsend vs. Brown, 68 Fla. 156, 67 South. Rep. 869. If there was only one, then the law is mandatory that it be published in that one. The law is mandatory as to the selection if there be more than one newspaper published in the county. It is mandatory as to the tax sale notice being published in a newspaper if there be only one newspaper published in the county, and the statute is directory only as to the time of selection. Section 50, Chapter 5596, Acts 1907; Stephens vs. Futch, *supra,* and Townsend vs. Brown, *supra.* The selection was made in this case on July 6th, 1914, pending the publication of the tax sale notice which was begun on July 3rd, 1914, and such selection and publication of notice will not be held ineffectual.

The assessment for the year 1914 was completed August 3rd, 1914, before the sale of August 4th, 1914, for the taxes of 1913, hence the assessor was not forbidden to make the assessment for 1914 by the provisions of Section 524, Compiled Laws of Florida.

The apparent clerical error or omission of the word Hundred, in certificate 337 of the sale of 1915, is not harmful to the owner, or uncertain as to the amount, and the proper amount, if there be a question, can be ascertained by other records required to be kept.

It follows, therefore, that the decree appealed from should be affirmed as it affects the Second parcel of land, and that it should be reversed as to the certificate affecting the First parcel, and it is so ordered.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND ELLIS, J. J., concur.

WEST, J., disqualified.