THE MIAMI BATTLECREEK v. J. NEWTON LUMMUS, JR., as Tax Assessor of Dade County, and HAYES WOOD, as Tax Collector of Dade County.

192 So. 211

En Banc

Opinion Filed November 21, 1939

*Francis M. Miller,* for Appellant;

*Stapp, Gourley, Ward & Ward, Melbourne L. Martin, W. P. Allen* and *Robert C. Gilroy,* for Appellee.

BROWN, J.—This suit was brought by the plaintiff, Miami-

Battlecreek, in May, 1936, against J. N. Lummus, the tax assessor, and Harry Goldstein (succeeded in office by Hayes Wood), the tax collector, of Dade County, Florida, to restrain them from assessing the property of the plaintiff for taxation and from collecting taxes thereon assessed. The plaintiff claims exemption from taxation under the Constitution and statutes of the State of Florida because:

"The real and personal property described and referred to herein is exempt from taxation under the Constitution and Statutes of the State of Florida, because the same is devoted solely and exclusively to scientific, educational and charitable purposes, and also because it is the intention of this plaintiff to continue to devote said real and personal property to such scientific, educational and charitable purposes."

The defendant, Lummus, made a motion to dismiss the bill of complaint, but the motion was denied. A decree *pro confesso* was entered against the defendant Harry Goldstein. Defendant Lummus then entered an answer in which he admitted that the corporation was organized as a non-profit concern but specifically denied the allegations of the bill setting forth that the corporation was one solely for charitable, educational and scientific purposes and setting forth that the plaintiff corporation was in fact only a high-class sanatorium or health resort. The defendant, Hayes Wood, then made a motion to vacate the decree *pro confesso* as to his predecessor in office and after the said motion was granted he entered an answer to the same effect as that of the defendant Lummus.

The cause was referred to Hon. Fred Botts as Special Master in Chancery to take testimony. The testimony was taken and the report of the special master was filed with the court. The findings of the special master were that the

plaintiff had proved all of the material allegations of its bill and was entitled to exemption from taxation. The defendants filed exceptions to these findings and the Chancellor sustained these exceptions and dismissed the cause at the costs of the plaintiff. This appeal is taken from that order of the Court dismissing the cause of action and the sole assignment of error is the granting of the order sustaining the exceptions to the special master's report.

The defendant offered no testimony in this case and the only question is as to the sufficiency of the testimony of the plaintiff to support their bill and to bring this institution within the exemptions' from taxation as set out in the Constitution and statutes of the State of Florida. The salient facts as deduced from the testimony of the plaintiff are:

The plaintiff, The Miami Battlecreek, was organized as a non-profit corporation on December 30, 1935, with the widely known physician, Dr. John H. Kellogg, as its president. In Article III of its charter among other things it is stated:

"To found within the State of Florida a medical institution, hospital and sanitarium for the care and relief of sick or infirm persons, for the instruction and training of both sick persons and those of average health in health habits and health promoting methods calculated to improve and maintain physical and mental health; at which institution may be received for treatment and training both indigent persons and patrons who are able to pay and do pay for the benefits received; and which institution shall devote all the funds and property acquired and received by it from any and various sources exclusively for maintaining itself, improving its facilities and equipment and promoting its purposes by activities in the direction of sanitary, hygienic,

dietetic, medical and eugenic reforms, race betterment, biologic living, through publications, lectures, research, investigations, and such other efforts as may be germane to or auxiliary thereto, all of its purposes being strictly humanitarian, philanthropic, charitable, benevolent, non-sectarian and altruistic and in no manner, directly or indirectly, for private gain or profit or dividend paying to any person."

"All of which work and acts shall be undenominational and purely charitable, benevolent, and philanthropic, and all of which shall be done with the means of said corporation not needed for its main and direct purpose, and all of which shall be without profit or dividend, direct or indirect, to the trustees or any of the members or directors of said corporation.

"To organize and to conduct classes or schools of nursing, physiotherapy, occupational therapy, physical education, home economics, dietetics and cookery, and to grant certificates or diplomas for proficiency in any of these subjects."

Prior to its organization, and as a part of the scheme of its inception, there had been organized, in September, 1930, a corporation for profit, Battlecreek, Inc. This former corporation acquired certain properties and operated a sanatorium or "health culture" center, similar to the Battle Creek Sanatorium in Michigan, which was founded by Dr. Kellogg. A routine of treatment and lectures was provided. A schedule of rates was set up—some patients paying in full for these services, some only a part, while still others were on the full charity of the institution.

The inception of the Florida institution grew out of the desire of the late Glenn H. Curtiss to establish in the Town of Miami Springs, close to the City of Miami, a health sanatorium. In June of 1930 he entered into negotiations with Dr. Kellogg, and as a result it was agreed between

Glenn H. Curtis Properties, Inc., and Dr. Kellogg and Battle Creek, Inc., a Florida corporation, that if the real property described in the bill of complaint could be used for a period of six years for the operation of an institution similar to the Battle Creek, Michigan, sanatarium, without profit to any one, that such property would be conveyed to a corporation controlled by Dr. Kellogg. It was also agreed that the institution would teach biologic living, as exemplified by the Michigan Institution which was managed by Dr. Kellogg. No dividends or salaries were paid by the corporation thus formed back in September of 1930. Dr. Kellogg lived at the institution during the period intervening before the re-incorporation in December, 1935, as a corporation not for profit, but paid for his room and board.

After the completion of the organization of the successor non-profit corporation in December, 1935, by the plaintiff in the court below, much the same routine was followed. The patients were cared for in a like manner, food and health experiments were carried on and public lectures were given. A free clinic was operated in the city of Miami Springs, and another conducted at the institution for the teachers of Dade County. There were no official connections between the plaintiff and any of the political subdivisions of the State of Florida. The salaries of the members of the board of trustees were limited and any and all surplus derived from the operation of the institution and donations made thereto was put back into the institution in the form of enlargements of the institution and in improving the equipment, along with the charity work of the institution. Examination of the record in this case, as to "house patients," which does not include those receiving services who did not occupy rooms in the institution, further discloses that: During the year of 1936 there were 5,401

"twenty-four hour day" full pay patients, 5,033 "twenty-four hour day" semi-charity patients, and 343 "twenty-four hour day" full charity patients. That the total revenue derived from patients in 1936 was $170,613.65 while there was expended for charitable work $39,391.97. Also it appears that the value of the property used in this institution had been doubled within less than one year, such additions being financed in part with the revenue derived from the patients that have paid for services in the institution, and in part by donations. It further appears that only those classes of persons approved by the board of trustees may become patients at the institution.

The report of the special master, among other things, contains the following:

"That the plaintiff devotes itself to scientific purposes in that it has constantly in progress, research work in the medical field of science, including X-ray, chemical, metabolism, clinical laboratories, use of citrus fruits and papayas, and soy acidophilus milk; that the plaintiff keeps in touch with many experimental laboratories throughout the world with reference to proper foods and health habits for mankind, and disseminates information to the public.

"That the plaintiff devotes itself to educational purposes in that it conducts classes and schools of nursing, physiotherapy, occupational therapy, physical education, home economics, dietetics and cookery and operates a clinic for the teachers of Dade County, Florida.

"That the plaintiff devotes itself mainly to charitable purposes for the following reasons: That the plaintiff has continuously operated and maintained since December 30, 1935, a sanitarium on and with the real and personal property described in the bill of complaint filed in the above cause; that at such sanitarium, people needing medical at-

tention are treated who can and do pay the prescribed rates, those who can and do pay a portion of the prescribed rates, and those who cannot pay anything; that people treated by the plaintiff are first given a physical examination to determine the causes of their ailments after which they receive such medical and surgical attention as may be necessary and then are treated in accordance with the theory and practice of biologic living; that the plaintiff cares for and treats sick people and attempts to train and educate the sick and the well so as to prevent diseases and disability by biologic living, consisting mainly of diet, exercise and health habits; that the plaintiff gives instruction to the public including the teachers of the public schools of Dade County, Florida, and publishes booklets, bulletins and magazines on such biologic living for the benefit of the public at large; that the plaintiff uses its property and facilities for the benefit of distressed people in cases of public distress such as hurricanes; that all people who apply to the plaintiff for treatment are given treatment whether they are able to pay for the same or not and those who are able to pay are charged fixed fees, and those who are unable to pay the fixed fees are charged in proportion to their ability to pay; that no person treated by the plaintiff is requested to use foods produced or manufactured by the food companies in which Dr. John Harvey Kellogg is interested, nor does literature distributed by the plaintiff advertise Dr. Kellogg's foods and products; that during the winter months, about four doctors and thirty nurses are in attendance at the plaintiff's said sanitarium but during the summer months, their numbers are reduced in proportion to the number of patients being treated at plaintiff's sanitarium; that the only sources of revenue of the plaintiff are from people who pay the full charges, those who pay a part of the full charges and dona-

tions from individuals; that the salaries of the plaintiff's officers are limited by its charter and said officers have not received the full amounts of salaries authorized by its charter; that no profit is received directly or indirectly by the officers and members of the plaintiff's corporation; that all revenue and funds received by the plaintiff are used by it solely and exclusively for the said purposes to which it devotes itself; that of the patients treated by the plaintiff and Battle Creek, Inc, a Florida corporation, from the beginning of operation of said sanitarium to December 31, 1936, about 24% paid the prescribed rates of charge, about 12% paid a portion of the prescribed rates of charge, according to their ability to pay, and about 64% received treatment from the plaintiff as charity, without charge; that of the patients who paid for treatment about 35% paid only a portion of the prescribed rates; that of the patients who paid the prescribed rates and those who paid nothing about 75% paid nothing; that the value of services to charity patients to December 31, 1936, is $72,170.75.

"That the plaintiff has used exclusively since December 30, 1935, the property described in the bill of complaint filed in the above cause for scientific, educational and charitable purposes without profit or dividend, direct or indirect, to the plaintiff and its trustees, members or directors; that the plaintiff has maintained by competent evidence the allegations of its bill of complaint and under the findings of fact herein and the testimony taken before me, the plaintiff is entitled to a final decree enjoining" the assessment and collection of taxes, because "such real and personal property should be exempt from taxation as long as it is used exclusively for scientific, educational and charitable purposes as aforesaid."

The question of tax exemptions on this type of institu-

tion is new to this Court. Similar questions involving purely educational and purely charitable institutions have already been decided and passed upon, however, and the terms of the statutes setting forth the exemptions pretty well defined therein. See Rast v. Hulvey, 77 Fla. 74, 80 Sou. Rep. 750; University Club v. Lanier, 119 Fla. 146, 161 Sou. Rep. 78; Lummus v. Florida Adirondack School, 123 Fla. 810, 168 Sou. Rep. 232; Lummus v. Miami Military Academy, 123 Fla. 832, 168 Sou. Rep. 241.

The exemption herein claimed is by virtue of and under Section 1 of Article IX and Section 16 of Article XVI, of the Constitution of the State of Florida, and Section 897 of the Compiled General Laws of Florida of 1927. The exemptions here claimed, if there be any, must be determined by the language of the statutes enacted by the Legislature pursuant to and within the proper constitutional bounds. See Rast v. Hulvey, *supra.* Therefore, this claimed exemption must be and is governed by the applicable constitutional provisions and by the language of the statutes as found in Section 897 of the Compiled General Laws of Florida of 1927. The amendment of this section by Chapter 18312, Acts of 1937, is not applicable to this case, which was instituted in May of 1936 and dealt particularly with the enjoining of the assessment and collection of taxes for that year, though of course the principles of law established in this case will govern for subsequent years so long as there is no change in the conditions which would exclude the property from the application of the principles pronounced by the Court. But it appears that the amendment of Section 897 of Chapter 18312 would not require any different decision in this case from that which we are making.

This Court has already held, and it is the general rule, that all privately owned property is subject to taxation for

the support, maintenance and efficiency of the government from which the property receives protection. See Lummus v. Florida Adirondack School, 123 Fla. 810, 168 Sou. Rep. 232. This rule is, however, subject to some few exceptions.

By statute in this State, all real and personal property, not expressly exempted therefrom, is subject to taxation. Section 1, Chapter 5596, Acts of 1907 (C. G. L. 1927, Section 893). All exemptions, being in the nature of special privileges or immunities, must be strictly construed in favor of the Sovereign in order to confine such exemptions to the limitations prescribed by said Sovereign; otherwise the law-making intent and the every purpose of government itself may be frustrated to the detriment of the public welfare and the common weal. See Rast v. Hulvey, 77 Fla. 74, 80 Sou. Rep. 750; Amos v. Jacksonville Realty & Mortgage Co., 77 Fla. 403, 81 Sou. Rep. 524; Lummus v. Florida Adirondack School, 123 Fla. 810, 168 Sou. Rep. 232.

Exemptions from taxation, being in the nature of special privileges, are viewed with disfavor by the courts unless it clearly appears that they are upon property being held and used *solely* and *exclusively* for a purpose or purposes recognized by our constitution and laws as being exempt. To allow exemptions other than in this manner would place an unjust proportion of the tax burden upon other classes of property.

In the case of Lummus v. Florida Adirondack School, Inc., *supra,* this Court, speaking through Mr. Justice BUFORD, said:

"Exemptions from taxation are granted by the sovereign only when and to the extent that it may be deemed to conserve the general welfare. Organic and statutory exemptions, being in the nature of special privileges or immuni-

ties, should be strictly construed in order to confine the exemptions within the limitations prescribed by the sovereign power; otherwise the law-making intent and purpose may be frustrated to the detriment of the public welfare. See Rast v. Hulvey, 77 Fla. 74, 80 Sou. Rep. 750; Amos v. J. R. & M. Co., 77 Fla. 403, 81 Sou. Rep. 524."

In that case it was held that the property of the school was exempt from taxation, and a careful reading of the opinion in that case tends to the conclusion that the property of the appellant in this case, was, at the time the case was decided in the lower court, likewise exempt from taxation.

Section 1 of Article IX of our Constitution as amended in 1924, promulgated that the Legislature shall provide for a uniform and equal rate of taxation, except that it may provide special rates on intangible property not exceeding five mills on the dollar, and shall prescribe such regulations as shall secure just valuation of all property, both real and personal, "excepting such property as may be exempt by law for municipal, educational, literary, scientific, religious or charitable purposes."

Section 16 of Article XVI of our Constitution reads as follows:

"The property of all corporations, except the property of a corporation which shall construct a ship or barge canal across the peninsula of Florida, if the Legislature should so enact, whether heretofore or hereafter incorporated, shall be subject to taxation unless such property be held and used exclusively for religious, scientific, municipal, educational, literary or charitable purposes."

Section 897 C. G. L., which deals with exemptions from taxation, and the third paragraph thereof, being the only paragraph pertinent here, reads as follows:

"Third. Such property of educational, literary, benevo-

lent, charitable and scientific institutions within this State as shall be actually occupied and used by them solely· for the purpose for which they have been or may be organized, but property of such institutions which is rented wholly or in part and the rents, issues and profits only used by such institutions shall not be exempt from taxation, nor shall any property held by them as an investment or for speculation be exempt from taxation. Provided, that this section shall not be construed to apply to the lower stories of charitable or benevolent institutions, necessarily using the upper stories of their lodge rooms and who rent the ground floor of such buildings, using said rents, issues and profits for the benefit of such charitable and benevolent purposes, or to the ground floor of public libraries, the rents, issues and profits of said ground floor being used for the benefit of said libraries."

This third paragraph of Section 897 C. G. L. was amended by Chapter 18312 of the Acts of 1937, to read as follows:

"Third. Such property of educational, literary, benevolent, fraternal, charitable and scientific institutions within this State as shall be actually occupied and used by them for the purpose for which they have been or may be organized, provided not more than 50 per cent of the floor space of said building or property is rented and rents, issues and profits of said property are used for the educational, literary, benevolent, fraternal or charitable purposes of said institution. And it is hereby declared that this amendment is made to clarify and make definite and certain said Section, and that it was and is the intent of said Section to exempt the property described in this Section as amended from all taxation in the State of Florida."

It is clear from the above constitutional and statutory

provisions, as well as from the prior decisions of this Court that the property of educational, charitable and scientific institutions is only exempt from taxation when the same shall be actually occupied and used by them exclusively for the purpose for which they have been organized, which purposes must fall within one or more of the several classes enunciated in the Constitution and the statutes.

We think it is clear from the evidence in this case that the appellant institution uses all of its funds and property exclusively for scientific, educational and charitable purposes without profit to any one, and therefore is exempt from taxation, unless it can be said that it is not entitled to the exemption because of the fact that its main source of revenue is derived from patients who are able to and who do pay for services received, which revenues, together with the funds received from donations, are used by it in maintaining the institution for the purposes mentioned, which includes the treating of patients who are not able to pay. The legal effect of this charging for services rendered to those patients who are able to pay upon the right to the exemption from taxation set forth in the Constitution and the statutes, constitutes the controlling question presented by this record. And it is a question which has given us some concern.

We have held that a school may be an educational institution, and its property entitled to the benefit of exemption from taxation, even though it charges tuition, and also compensation for rooms and meals, resulting in some surplus and a livelihood for its owner, where such charges are incidental to the use of the property for educational purposes. Lummus v. Florida-Adirondack School, *supra*. And we have held that a museum containing works of art (the Ringling Museum at Sarasota) and a school of art

in connection therewith, was property held and used exclusively for educational purposes, and hence not subject to taxation. Strohmeyer v. Rembrandt Corp., 123 Fla. 833, 168 So. 242.

In the decree appealed from, the learned chancellor states that: "I find charity as defined in law to be a gift or dedication of real or personal property which, as distinct from a private use or trust, is one that is for the public benefit, and has an indefinite or undetermined number of beneficiaries," and that "the nature of the plaintiff's use of the property in question is not for charity even though it may render some charitable services."

The court below evidently considered that the only question was whether or not the institution here in question was held and used for charitable purposes only, and did not consider the scientific and educational features, as being material under the evidence adduced. The decree below doubtless correctly defines a charitable use, and what constitutes a charity, but the exact question here as we understand it is whether or not this is an educational, charitable and scientific institution and whether its property is used solely for those purposes. Of course, it would be necessary, if an institution claimed exemption only as a charitable institution to show that its property was used exclusively for that purpose, but an institution may under the Constitution and statutes be exempt from taxation if it is a combined educational, charitable and scientific institution, provided its property which is sought to be exempted is used solely and exclusively for those purposes. The statute uses the word "institution," so we are not confined to the common-law definition of the word "charity" or "charitable use."

As was said in Congregational S. S. & Pub. Soc. v. Board of Review, 290 Ill. 108, 125 N. E. 7:

"The fundamental ground upon which the exemption in favor of the charitable institutions is based is a benefit con-ferred upon the public by themselves and the consequent relief, to some extent of the burden imposed on the State to care for and advance the interest of its citizens."

See also Mass. General Hospital v. Belmont, 233 Mass. 190, 124 N. E. 21. In a note contained in 34 A. L. R., at page 637, it is said:

"The courts are agreed that a charitable institution does not lose its charitable character and its consequent exemption from taxation merely because recipients of its benefits who are able to pay are required to do so, where funds derived in this manner are devoted to the charitable purposes of the institution."

A large number of cases are cited in support of that proposition, and the overwhelming weight of authority supports it. See also Michigan Sanitarium, etc., Assn., v. City of Battle Creek, 138 Mich. 676, 101 N. W. 855, which the property of the Battle Creek Sanitarium, quite similar to the one here involved, was held exempt. Cases involving the question of whether or not orphanages and hospitals could be classed as charitable institutions are also reviewed in the note in 34 A. L. R., commencing at page 641. This general subject is further treated in an annotation in 62 A. L. R, pages 328-342.

Indeed, the principle has received some recognition by the Legislature of this State in amending Section 897 C. G. L. by Chapter 18312, hereinabove quoted from, wherein it is provided that such institutions shall be exempt from taxation when occupied and used for the purposes for which they were organized "provided not more than 50 per cent of the floor space of said building or property is rented and the rents, issues and profits of said property are used by the

educational, literary, benevolent, fraternal or charitable purposes of said institution."

Undoubtedly, if the evidence in this case showed that this institution was being run for a profit, and that the institution was making a profit from the revenues received from pay-patients, which profit was paid out to the stockholders or trustees in the form of dividends, or paid out to its officers by way of exorbitant or unreasonably high salaries, then the receipt of such revenues from paying patients in excess of the amount reasonably necessary for the maintenance of the institution would prevent the institution from being exempt from taxation. But where, as here, the evidence shows that the funds derived from its pay-patients are devoted exclusively and in good faith to the charitable, educational and scientific purposes of the institution, then the institution does not thereby lose its character as a charitable, educational and scientific institution and its consequent privilege of exemption from taxation. As was said in the case of Lummus v. The Florida Adirondack School, *supra*, exemptions from taxation are granted by the sovereign only when and to the extent that it may be deemed to conserve the general welfare. The evidence in this case convinces us that this institution comes within the spirit of the principle thus enunciated, and that the prime purpose for which it was organized and for which its property is exclusively occupied and used is to conserve and promote the general welfare, as an educational, scientific and charitable institution.

We have considered the cases cited by the able counsel for the appellees but our conclusion is that in the light of our own constitutional provisions and statutes and the former decisions of this Court, this appellant institution was, when this case was heard and adjudicated in the circuit court,

occupying and using all of its property, and using all of its funds, for its maintenance as a scientific, educational and charitable institution, without profit to any one directly or indirectly, and without the payment of excessive or unreasonable salaries to its officers, and that the appellant was therefore entitled to the relief prayed for in its bill.

By stipulation of counsel for both sides there has been attached to appellant's reply brief a copy of a letter from the Deputy Commissioner of Internal Revenue, at Washington, D. C., which shows that the institution has been exempted by the Federal Government from the payment of income taxes, and stating that those who have made or may make contributions to the institution are permitted to deduct such donations in arriving at their taxable income, under the provisions of Section 101 of the Revenue Act of 1936, which exempts institutions operated exclusively for religious, charitable, scientific, literary and educational purposes." This section is worded in language very similar to that contained in the Constitution and statutes of this State.

For the reasons above pointed out, the decree of the court below is reversed, and the cause remanded for further proceedings consistent with the foregoing opinion.

TERRELL, C. J., BUFORD and THOMAS, J., concur.

WHITFIELD, P. J., and CHAPMAN, J., dissent.