66 So.2d 285 (1953)
ORANGE COUNTY et al.
v.
ORLANDO OSTEOPATHIC HOSPITAL, Inc.
Supreme Court of Florida, Special Division A.
July 17, 1953.
Akerman, Dial & Akerman, Orlando, for appellants.
Baker & Thornal, Orlando, for appellee.
SEBRING, Justice.
The defendants below have appealed from an adverse ruling in a suit brought by the plaintiff to obtain a decree exempting its property from the payment of ad valorem taxes, on the ground that the property is being used for educational, scientific and charitable purposes.
*286 The case below was tried on a complaint, an answer, and a stipulation as to the relevant facts. From these pleadings and stipulation the following appears:
Orlando Osteopathic Hospital is a non-profit corporation organized under the laws of Florida. It has no stockholders. Its members are osteopathic physicians and surgeons, and its facilities are available for the use of all qualified osteopathic physicians and surgeons. The charter of the corporation requires it "to use and expend all surplus moneys and funds only for the purpose of improving, enlarging and increasing the said hospital and hospital equipment."
No profits from the operation of the hospital are turned back to the members. Whenever any surplus income accrues, it is used to purchase additional facilities and equipment and in the expansion of hospital services. For an 8-year period covering the years 1944 to 1951, inclusive, the corporation was able to retain only 3.32% of its net revenue, and during the same period an average of 34.19% of its net revenue was devoted to charity patient treatment, not including out-patient charity for which no figures were available but which was substantial.
The corporation does not pay salaries to the doctors, officers, directors or trustees of the institution. Reasonable salaries are paid to nurses and clerical help. The property is used strictly and solely for hospital purposes. In the hospital is a well-equipped laboratory and modern, efficient diagnostic X-ray equipment.
Throughout the period of its existence, the hospital facilities have been used for training young doctors and interns in the science of osteopathic medicine and surgery. Frequent forums, seminars and meetings of central Florida osteopathic physicians and surgeons are held in the hospital for the purpose of discussing osteopathic medical problems and peculiarities of particular cases and new and improved methods of osteopathic treatment. Bi-weekly meetings of the staff of the hospital are held for the same purpose, and these meetings include the nurses, who are given the benefit of discussions and papers presented.
Hospital facilities, generally, in Orange County, have been overcrowded for a number of years and have been unable to meet the patient demand. As its contribution toward relieving this condition, the plaintiff, for the period from 1944 to 1949, inclusive, cared for 3807 patients, or, on the average, 635 patients a year, exclusive of patients cared for in the out-patient department. Except for this contribution, patients desiring treatment by osteopathic physicians and surgeons in the area would have been denied the advantages of hospital facilities, because they could not have obtained such treatment in the other hospitals in the county for the reason that the other hospitals do not permit osteopathic physicians and surgeons to use their facilities
The hospital makes reasonable charges to patients who are able to pay and serves without charge all patients seeking its services who are unable to pay. No patient is denied the use of the facilities or services of the hospital because of inability to pay, and in the services rendered and the use of the accommodations provided, no distinction is made between those patients who are able to pay and those who are not.
Since its incorporation the corporation has been exempted from the payment of federal income taxes because of its being a corporation organized and operating exclusively for charitable purposes. The comptroller of the State of Florida has ruled that the corporation is exempt from the payment of sales taxes on its purchase because it is a charitable, educational and scientific corporation.
The question is whether the decree of the trial court holding the corporation to be exempt from the payment of county ad valorem taxes is supported by the record.
Section 1, Article IX, of the Florida Constitution, F.S.A., provides that "The Legislature shall provide for a uniform and equal rate of taxation * * * excepting such property as may be exempted by law for municipal, education, literary, scientific, religious or charitable purposes." *287 Pursuant to this constitutional provision, the Legislature enacted section 192.06, Florida Statutes 1951, F.S.A., which provided, in part as follows:
"The following property shall be exempt from taxation: * * *. Such property of education, literary, benevolent, fraternal, charitable and scientific institutions within this state as shall be actually occupied and used by them for the purpose for which they have been or may be organized; provided, not more than seventy-five per cent of the floor space of said building or property is rented and the rents, issues and profits of said property are used for the educational, literary, benevolent, fraternal or charitable purposes of said institution; provided, further, that nothing in this subsection shall be construed as applying to special assessment by municipalities for sidewalks, curbing, street paving or other local improvements."
It is settled in this jurisdiction that "Exemptions from taxation are granted by the sovereign only when and to the the extent that it may be deemed to conserve the general welfare. Organic and statutory exemptions, being in the nature of special privileges or immunities, should be strictly construed in order to confine the exemptions within the limitations prescribed by the sovereign power; otherwise the lawmaking intent and purpose may be frustrated to the detriment of the public welfare." Lummus v. Florida-Adirondack School, 123 Fla. 810, 168 So. 232, 237. "But this does not mean that where an exemption is claimed in good faith the provision of law under which the claimant attempts to bring himself is to be subjected to such a strained and unnatural construction as to defeat the plain and evident intendments of the provision." Lummus v. Cushman, Fla., 41 So.2d 895, 897.
In the instant case the trial judge recognized the principles that must govern in the determination whether or not the institution involved should be exempted from the payment of taxes, and made a very clear and comprehensive analysis of the controlling evidence on the issue.
From his findings, it appears that "there is but very little educational use of the property, so that it is essential that a determination be made whether the use is scientific or charitable within the usual meaning of those terms in connection with the operation of a hospital."
As to the issue whether the property was being actually occupied and used by the corporation for scientific or charitable purposes, the trial judge found: "A hospital is charitable or not depending on how it is operated. * * * The one in question partakes more of a private nature, but we must examine the plan of operation to decide whether it was public and charitable. * * *
"The charter merely says that it shall be a non-profit hospital where charity and other patients may be treated. The stipulation shows that plaintiff make reasonable charges to patients who are able to pay * * * all surplus income over expenses is converted into the purchase of additional facilities and equipment and in expanding hospital services. * * *
"If the object for which an institution is founded is the general public good, and not private gain, and it is so conducted that the public receives all the benefits of it, it is purely a public charity. It is shown that much of the services listed by the hospital for charity was for patients not admitted as charity patients but after services were rendered the hospital found itself unable to collect. If these were unable to pay, I believe they may be classed as charity patients although they were not admitted as such. A policy of not requiring a showing of financial responsibility before receiving a patient is to be commended.
"I don't consider that the charter shows that plaintiff was organized as a purely charitable institution  it was, according to its expressed purpose, for charity and other patients, yet if in fact the property was used exclusively for educational, scientific or charitable purposes it would be entitled to exemption.
"According to * * * the Chairman of the Board * * * all surplus derived from the hospital since its inception has *288 been used for improvements and for the purchase of necessary equipment to improve the hospital facilities.
"The Hospital has a schedule of amounts of deposits for the various types of cases to be treated and when a patient applies he is required to pay the specified amount if he is able or if he is able to pay only a part nevertheless he is received and treated and the hospital accepts the amount he is able to pay. If a patient applies who is unable to pay nevertheless he is accepted and accorded the same treatment and attention as those who do pay. So far as hospital services are concerned, no distinction is made between those patients who are able to pay all or a part of their bill and those who are not able to pay at all."
From these findings the trial judge concluded that the hospital, as operated, came within the provisions of section 1, Article IX, of the Constitution, and section 192.06, Florida Statutes 1951, F.S.A., and granted the exemption.
We find no error in this ruling.
From the facts in the case it is shown that no person or corporation receives profit from the use of the property except the members of the public who apply for its use. Through the facilities of the institution, the corporation offers a type of care and treatment not available in other hospitals in the area. That there is present a substantial charitable use is beyond question. Patients who are unable to pay are received for treatment and receive the same care and attention as those who are able to pay. As to the patients who are able to pay, the evidence is plain that profits received from treatment of such patients go back into the expansion of facilities and services. "A charitable institution does not lose its charitable character and its consequent exemption from taxation merely because recipients of its benefits who are able to pay are required to do so, where funds derived in this manner are devoted to the charitable purposes of the institution." Miami Battlecreek v. Lummus, 140 Fla. 718, 192 So. 211, 218; Lutheran Hospital Ass'n v. Baker, 40 S.D. 226, 167 N.W. 148; Board of Com'rs of Tulsa County v. Sisters of the Sorrowful Mother, 141 Okla. 32, 283 P. 984; anno. 34 A.L.R. at 637, 62 A.L.R. at 330, and 108 A.L.R. at 286.
We conclude from the facts in the case that aside from any issue as to the use of the institution for educational or scientific purposes, the property was devoted to charitable purposes, within the purview of the controlling law, and hence that the decree appealed from should be affirmed.
It is so ordered.
ROBERTS, C.J., and TERRELL, J., and DAYTON, Associate Justice, concur.