HOBSON, Justice.
This is an appeal by the plaintiff from a summary final decree for defendants.
In this.suit plaintiff sought to enjoin the assessment and collection of taxes upon its property located at Ormond Beach and *809 known as “The Casements” on the theory that such property was being used exclusively for religious, charitable and educational purposes. The defendants, who were the tax collector and tax assessor for Volusia County, were temporarily enjoined from assessing and collecting taxes for the years 1952 and 1953. After the suit was filed, defendants took the deposition of one C. A. Maddy, vice president of the plaintiff corporation. The summary final decree was based upon this deposition and an affidavit in behalf of the plaintiff by one C. C. Erhardt. The chancellor found that the plaintiff did not use the property for charitable purposes and that there was no dispute as to any material fact. He dissolved the temporary injunction and entered judgment for the defendants.
At the hearing on defendants’ motion for summary final 'decree, it appeared that the original Maddy deposition had been in the possession of previous attorneys of record for the plaintiff, and could not be found. Counsel for defendants submitted a copy of the deposition to the court and suggested that it be used as a substitute for the original. The chancellor ruled that he would consider the copy of the deposition as the original if such were agreeable to the attorneys for all parties, whereupon counsel for the plaintiff and one of the attorneys for the defendants agreed that the copy of the deposition be substituted for the original. These facts are evident from the supplemental transcript of the record, which includes an affidavit by the chancellor.
.Appellant now contends that the copy of the Maddy deposition should not be considered by this court and should not have been considered by the chancellor. We think it abundantly established that the plaintiff consented to the use of this copy below and waived any objection which he might 'have- raised. -It is not contended that the copy do'es not truly represent the testimony1 as given. The objection is entirely technical, but the authorities relied upon are’ not in point and it must fail.
After the hearing on the motion for summary final decree the plaintiff filed several affidavits in opposition to the motion, but the chancellor recites in his findings that these affidavits were not considered because leave, of the court to file them was neither requested nor granted. Plaintiff contends that this ruling was error, but because of the view we take of the case it is unnecessary to resolve this question.
Appellant contends that it was error in any event to enter a summary final decree for the defendants because there were unresolved issues of material fact. As stated above, the summary final decree was predicated wholly upon the Maddy deposition and the Erhardt affidavit. Erhardt stated in his affidavit that he was at the time of making the affidavit and during the year 1952, an occupant of The Casements property and that Fellowship Foundation, Inc., the plaintiff, operated a school on the property during the year 1952, that the students of plaintiff’s school were housed and fed on the property, as was the staff of teachers, that classes were held, and that students were graduated from' the school in 1952. He further describes the personnel and curriculum, and goes on to say that students were accepted into the school on a charitable basis and that the school was operated not for profit and always operated at a loss. This affidavit is vague and of slight probative value in establishing the plaintiff’s case, but it contains no admissions which could be used against the plaintiff and in support of the summary final decree for defendants.
This leaves us to consider the Maddy deposition and exhibits thereto as the sole support for the summary final decree. We have considered this deposition and its exhibits at length: Apparently Maddy was deposed as an individual witness. It does not appear that the plaintiff corporation was deposed by and through Maddy as a corporate officer. We seriously doubt, therefore,' whether admissions made by Maddy in'the course of his deposition could bind the plaintiff corporation in any event. It has been held that a corporation is not bound by the declarations of its officers or *810 agents while on the witness stand, on the ground that while testifying they are not acting for the corporation, but for themselves individually. Saltmount Oil Corp. v. Imperial Crown Royalty Corp., Tex.Civ.App., 98 S.W.2d 418; 20 Am.Jur., Evidence, Sec. 600, p. 514. But even if we pass over this point, we do not find it conclusively established by the Maddy deposition that there is no genuine issue of material fact remaining.
The case is to be distinguished from Lewis v. Lewis, Fla., 73 So.2d 72, where the record contained many highly relevant and controlling admissions made by an individual plaintiff upon deposition which proved conclusively that he had no case to be tried. We there held that he could not later, in opposition. to a motion for summary judgment made by the defendant, attempt to create issues of fact in disregard of admissions which he had previously made.
From the cold record, Maddy appears to have been an evasive witness and his testimony is vague and uncertain. He professed not to remember a good many salient features of the operation of the plaintiff corporation at The Casements property, although he apparently managed the plaintiff’s several enterprises. He was also short of memory when records were sought to be produced, but he never testified that no records were in existence. Obviously, if Maddy had testified in this manner for the plaintiff and the close of the plaintiff’s case had been reached, a judgment for defendants would necessarily follow. But we are here concerned with a summary judgment for defendants which must be differently based. The very vagueness of Maddy’s testimony which would render it insufficient to support a judgment for the plaintiff now works in the plaintiff’s favor through its insufficiency to support a summary' judgment for the defendants.
Generally the amended complaint alleged that The Casements property was purchased for the purpose of providing a location for plaintiff’s school, for the establishment of a retirement home for elde,rly Christian people, and for the carrying on of educational, religious and charitable activities, and that the property was so held and used from December, 1951, throughout 1952 (the year for which the taxes involved in this suit were levied), and during 1953 and thereafter. These allegations were denied in the answer. The complaint alleged that a school was operated upon the property during 1952 and the answer denied this.
The chancellor found that the property was operated as a retirement home under a plan whereby rooms were leased for life to the occupants at a fixed sum and that prices ran as high as $10,500 for such a lease. He further found that “the z-ec-ord does not disclose a single charity case, or the case of a person who obtained a room without paying for it.” But the record is not complete, and does not conclusively show that there were not charity cases. The fact that a charge was made for rooms is not necessarily fatal to the contention of the plaintiff. See Miami Battlecreek v. Lummus, 140 Fla. 718, 192 So. 211, wherein we held that a combination hospital, educational and scientific corporation might be tax-exempt even though patients who were able to pay were charged for services rendered, and Orange County v. Orlando Osteopathic Hospital, Fla., 66 So.2d 285, wherein we reaffirmed this holding. And F.S. Sec. 192.06(3), F.S.A., if its ‘ affirmative requirements . were met, would authorize the exemption claimed “•provided, not more than seventy-five per cent of the floor space of said building or property is rented and the rents, issues and profits of said property are used for the educational, literary, benevolent, fraternal or charitable purposes of said institution.” It does not appear from this record what percentage of the floor space was rented, or just what became of the proceeds.
Maddy testified that he had no “definite record” of people who were fed and housed at The Casements free of charge in 1952, but he testified there were many of such charity cases. Later in his deposition, however, he testified that a Miss Boland would *811 know how many were fed but that “to the best of my knowledge” there was no record of people permitted to stay at The Casements overnight without paying anything. Maddy also testified that there was a long religious convention held at The Casements, probably in 1952. Maddy testified that “to date”, i. e., to the date of the taking of his deposition, he “presumed” that “roughly $160,000” had been taken in by the corporation for rooms at The Casements. He also testified that “we have paid more than $100,000 in cash besides insurance and taxes and upkeep and improvements out of these amounts and contributions that have conie in.” The chancellor found that the plaintiff was not able to produce any record of donations received for charitable purposes. Maddy testified, however, that such contributions had been received.
The chancellor found that the plaintiff operated an “alleged school on the property in question from January 14, 1952, until May of 1952 ,:* * * ”. Maddy’s testimony regarding this school was generally vague, but he did testify unequivocally that such a school was in existence. The chancellor found that this school could not be considered for tax purposes because the status of the property for assessment for taxes is determined as of January 1 of each year, and this school commenced on January 14, 1952. From the whole Maddy deposition, however, it appears that to the best of Maddy’s recollection the students either registered or commenced to take instruction on January 14th, although the school might have been ready for their attendance earlier than that. As plaintiff-appellant points out, the first week or weeks in January are generally counted as vacation time in a school. It appears that this school was transferred from Sanford. We do not consider the record on this point sufficiently complete to justify a finding that the school commenced using The Casements property only-after January 1, 1952. Although, as. the chancellor found, the school was not accredited, we do not consider this necessarily fatal, for the statute under which the exemption is claimed, F.S. Sec. 192.06(3), F.S.A. does not specify that a school must be accredited to become tax-exempt. The chancellor further found that “if there was a school, it was one in name only”. Maddy testified that there was an actual school. The finding of the chancellor tends to impeach Maddy’s credibility, which cannot be done upon the cold record of a deposition on an application for summary final decree.
In view of the issues raised by the amended complaint and answer thereto, we find that from the Maddy deposition and the Erhardt affidavit the chancellor could not have had sufficient information about the use to which The Casements property was put during the critical period to' conclude, as he did, that the “undisputed testimony shows that the plaintiff did-not use the property for charitable purposes.” It follows that under Orange County v. Orlando Osteopathic Hospital, supra, 66 So.2d 285; Miami Battlecreek v. Lummus, supra, 140 Fla. 718, 192 So. 211; and Lummus v. Florida Adirondack School, 123 Fla. 810, 168 So. 232, there are genuine issues of material fact to be tried. In making this determination we do not mean to suggest any view on the merits of the case.'' We mean only to hold that as a procedural matter it was error to grant the motion for summary final decree upon this record, in' that it was not conclusively made to appear,without a genuine issue remaining to be resolved, that the property' involved in this' litigation was not entitled to tax exemption-under F.S. Sec. 192.06(3), F.S.A.
The judgment appealed from must be, and it is hereby, reversed and the cause remanded for further proceedings not inconsistent with this opinion.
DREW, C. J., THORNAL, J„ and MILLEDGE, Associate Justice, concur.