CARROLL, DONALD K., Chief Judge.
The plaintiff, a nursing home operator, has appealed from a final decree entered by the Circuit Court for Duval County dismissing its complaint in which it claims tax-exempt status as a charitable institution, and dismissing the cause.
This final decree was entered after the chancellor had granted the motions of several defendants to dismiss the complaint for failure to state a cause of action and after the plaintiff had announced that it would rely upon the said complaint and would not amend it. This decree, however, did not specify the particular ground upon which the chancellor dismissed the complaint.
In this suit the plaintiff seeks a declaratory decree that its property is held and used exclusively for charitable and benevolent purposes within the meaning of the Constitution and statutes of the- State of Florida, prays for a cancellation of a tax sale certificate for 1959 taxes assessed against the plaintiff’s property, and seeks an injunction against the collection of 1960 and future taxes against its property. The defendants in the suit are the tax collector and tax assessor of Duval County, the circuit court clerk of the said county, and the comptroller of the State of Florida.
*787 According to the complaint: The plaintiff is organized as a corporation not for profit operating under a charter approved five years before by the Circuit Court for Duval County. The plaintiff operates a convalescent home for the care of aged and convalescent members of the public needing nursing care and furnishes to its patients room, board, and nursing care. The plaintiff has no requirements for admission other than the need of the individual and the availability of facilities. The plaintiff undertakes to charge each patient so received on the basis of ability to pay and the particular care needed. The actual per person cost to the plaintiff for furnishing such nursing services averages approximately $90 to $100 a month. The plaintiff quotes a basic rate of charge for normal services at $125.00 a month, but accepts and receives patients approximately as follows: 4% no charge, 6%' at $66.00 per month, 10%' at $81.40 a month, 12% at $93.13 a month, 18% at $99.55 a month, and 50%' at $129.00 a month. The plaintiff provides fifty beds for patients, approximately forty-five of which are occupied at all times.
The complaint further alleges: The buildings on the land involved in the suit consist of a hospital building, nurses’ quarters, and a bungalow rented to an employee who is on 24-hour call. The rental from the bungalow is used, along with the other revenues of the plaintiff, for the operation of the hospital and the charitable purposes of the institution. The said rented premises constitute less than 75%' of the floor space of the buildings or property involved. The charter requires that all charges made for services and facilities over and above actual expenses shall be ttsed in the care and treatment of persons unable to pay therefor. No officer of the plaintiff corporation receives any compensation except the registered nurse who manages the hospital. The charter specifies that no member of the corporation shall have any proprietory interest in the property of the corporation.
The complaint further alleges that the plaintiff has been recognized by the Comptroller of the State of Florida as a charitable organization exempt from taxation under the Florida Sales and Use Tax Law; by the Florida Industrial Commission as a charitable organization exempt under the Florida Unemployment Compensation Tax Law; and by the United States Treasury Department as a charitable organization exempt under the Federal Income Tax Law.
The exemption law involved on this appeal is Section 192.06, Florida Statutes 1959, F.S.A., which reads in pertinent part:
“192.06 Property exempt from taxation
The following property shall be exempt from taxation:
******
“(3) Such property of education, literary, benevolent, fraternal, charitable and scientific institutions within this state as shall be actually occupied and used by them for the purpose for which they have been or may be organized; provided, not more than seventy-five per cent of the floor space of said building or property is rented and the rents, issues and profits of said property are used for the educational, literary, benevolent, fraternal or charitable purposes of said institution; * *
As stated above, the chancellor did not set forth in his decree his reasons for dismissing the complaint, but the plaintiff in its appeal brief says that it “believes” that the court was of the opinion that the practice of collecting a monthly charge in excess of the cost of care from fifty per cent of its patients, deprived the plaintiff of the exemption provided by the statute. The appellant contends in its brief that “a charitable institution does not lose its charitable character and its consequent exemption from taxation merely because recipients of its benefits who are able to pay are required to do so, where funds derived in this manner are devoted to the charitable purposes of the institution.” In support of this contention the appellant relies chiefly upon *788 Miami Battlecreek v. Lummus, 140 Fla. 718, 192 So. 211 (1939). The Supreme Court held in that case that the institution in question was entitled to tax exemption where the funds derived from their pay-patients are devoted exclusively to the charitable, educational, and scientific purposes of the institution, the Supreme Court saying:
“ * * * But where, as here, the evidence shows that the funds derived from its pay-patients are devoted exclusively and in good faith to the charitable, educational and scientific purposes of the institution, then the institution does not thereby lose its character as a charitable, educational and scientific institution and its consequent privilege of exemption from taxation. * * * The evidence in this case convinces us that this institution comes within the spirit of the principle thus enunciated, and that the prime purpose for which it was organized and for which its property is exclusively occupied and used is to conserve and promote the general welfare, as an educational, scientific and charitable institution.”
Section 192.06, Florida Statutes, F.S.A., quoted above, exempts from taxation “such property of education, literary, benevolent, fraternal, charitable and scientific institutions within this state as shall be actually occupied and used by them for the purpose for which they have been or may be organized. * * * ”
In the Miami Battlecreek case the institution was engaged in extensive activities in the educational and scientific fields, as well as charitable, but nowhere in the complaint before us does the appellant claim that it engages in any activities referred to in the quoted exemption statute other than benevolent and charitable purposes.
The complaint before us also fails to allege directly that the funds derived from the appellant’s pay-patients are devoted exclusively to the benevolent or charitable purposes of the institution or to the other purposes enumerated in the exemption statute. Without such an allegation, the appellant cannot bring its complaint within the doctrine recognized in the Miami Battlecreek case.
Even if the complaint had contained the just-mentioned allegation, which it does not, it would be difficult or impossible to reconcile such an allegation with the allegations in the complaint as to the rates charged by the appellant, as mentioned earlier in this opinion: 4%' no charge, 6% at $66.00 a month, 10% at $81.40 a month, 12%' at $93.13 a month, 18%' at $99.55 a month, and 50% at $129.00 a month. We should consider these figures in the light of the other allegations of the complaint that the appellant provides 50 beds for patients, about 45 being occupied at all times, and that the actual average cost per person to the plaintiff is $90 to $100 a month. Taking as an easy-to-compute example that the fifty available beds were occupied by patients and that the alleged percentages held true at the time, the 50 patients would pay an average of $105.69 a month apiece — or a profit of $5.69 if the cost per patient is the alleged maximum of $100 per month, or $15.69 if the cost was the alleged minimum of $90 per patient per month. A similar result would be reached, assuming the alleged percentages prevail, if other numbers of patients are used in the example. With its admission in the complaint that only 4% of its patients pay nothing, that 46% pay a substantial amount monthly, and 50%' pay $29 to $39 a month more than the cost per patient, the appellant has failed to allege facts from which an inference could be fairly drawn that its funds are devoted exclusively to benevolent and charitable purposes.
As the Supreme Court held in Miami Battlecreek v. Lummus, supra:
“Exemptions from taxation, being in the nature of special privileges, are viewed with disfavor by the courts unless it clearly appears that they are *789 upon property being held and used solely and exclusively for a purpose or purposes recognized by our constitution and laws as being exempt. To allow exemptions other than in this manner would place an unjust proportion of the tax burden upon other classes of property.”
See also Orange County v. Orlando Osteopathic Hospital, 66 So.2d 285 (Fla.1953) and Fellowship Foundation v. Paul, 86 So.2d 808 (Fla.1956), in which the Supreme Court followed the holding in the Miami Battlecreek case in analogous factual situations.
Under these circumstances we think the chancellor correctly dismissed the complaint and cause, and, therefore, the final decree appealed from is
Affirmed.
STURGIS and WIGGINTON, JJ., concur.